SAVAGE et al., Appellants,

v.

AMERICAN FAMILY INSURANCE COMPANY, Appellee.

[Cite as Savage v. Am. Family Ins. Co., 178 Ohio App.3d 154, 2008-Ohio-4460.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–273.

Decided Sept. 4, 2008.

Robert C. Paxton & Associates and Robert C. Paxton II, for appellants.

Frost, Maddox & Norman and Mark S. Maddox, for appellee.

TYACK, Judge.

{¶ 1} Kelly and Rebecca Savage appeal from the March 4, 2008 judgment entry of the Franklin County Court of Common Pleas granting appellee, American Family Insurance Company's ("AFI's") motion for summary judgment. For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} This is a dispute between the Savages and AFI over a claim for the loss of personal property resulting from a burglary of the Savages' home. On or about May 4, 2005, the Savages returned from an out-of-town visit to find that their home had been burglarized and their 2002 Pontiac Grand Am stolen from the garage. The police investigated, but no one was ever charged with the crime, and the automobile was not recovered.

{¶ 3} The Savages filed a claim with AFI. Kelly Savage filled out a theft form dated May 5, 2005, listing the personal property in the vehicle at the time of the theft. The Savages completed and returned a burglary or theft notice of loss dated December 20, 2005. The amount of personal property claimed was left blank. They submitted a sworn statement in proof of loss on or about December 29, 2005. It too left the amount of personal property blank.

{¶ 4} During AFI's investigation, it was revealed that in the year 2000, the Savages had filed for bankruptcy and had listed that they owned personal property worth $4,303. AFI noted that the Savages had listed in excess of $50,000 of personal property stolen in the burglary, and many of the items claimed as stolen were not listed in the bankruptcy petition. Because of the large discrepancy, in February 2006, AFI requested examinations under oath of Kelly and Rebecca Savage. Kelly's examination took place on April 10, 2006. Rebecca's examination could not go forward on that day due to a schedule conflict, but the parties agreed to reschedule it.

{¶ 5} Kelly Savage explained that he sold many of his guns, tools, jewelry, and other equipment to friends and relatives in an attempt to stave off bankruptcy. He stated that he had an agreement with his friends and relatives that he would be allowed to buy the items back as money became available. He was also questioned about his general finances, including income from driving a truck and various outstanding bills.

{¶ 6} AFI questioned the ability of the Savages to accumulate the personal property they claimed as stolen in the time following the bankruptcy. Nine days after Kelly Savage's examination under oath, AFI requested the Savages' tax

returns for the years 2000 to 2005. The Savages refused to provide the returns even after AFI reminded them of the contractual provisions in the policy requiring the Savages to submit to examinations under oath and to provide pertinent financial records. Ultimately, the Savages agreed to make Rebecca available for an examination under oath, but still refused to provide the tax returns.

{¶ 7} Rebecca Savage still had not submitted to an examination under oath when on September 15, 2006, the Savages filed suit claiming that AFI had breached the insurance contract in bad faith by failing to cover their loss.

{¶ 8} AFI filed a motion requesting the court to bifurcate the breach-of-contract claim from the bad-faith claim. The trial court granted this motion on January 8, 2007, staying discovery on the bad-faith claim pending resolution of the breach-of-contract claim.

{¶ 9} On June 25, 2007, AFI filed a motion for summary judgment on the grounds that the Savages had failed to meet certain conditions precedent for coverage under the policy. In this case, the policy contains a clause that requires the policyholder to provide AFI with records and documents it requests and to submit to an examination under oath if such is requested. The trial court found that it was undisputed that AFI had requested an examination under oath of Rebecca Savage, but that she did not submit to such an examination. In addition, the trial court found it undisputed that AFI had requested the Savages' tax returns encompassing the time period between their filing for bankruptcy and the burglary. The Savages did not provide AFI with the documents. The trial court concluded that because the Savages had failed to comply with conditions precedent, "AFI had no contractual obligation to provide the plaintiffs with insurance coverage at the time this lawsuit was filed." Therefore, summary judgment in favor of AFI was appropriate because AFI did not breach the contract. The trial court decided the matter in favor of AFI in a decision dated January 14, 2008.

{¶ 10} Before the trial court entered judgment, the Savages filed a motion for reconsideration, arguing that in the course of discovery, the tax returns had been or were in the process of being provided, and the parties had reached an agreement to depose Rebecca Savage. The trial court denied the motion on the basis that at the time the lawsuit was filed, AFI had neither granted nor denied insurance coverage, and AFI had not yet breached the contract or acted in bad faith. Thus, summary judgment was granted based upon the Savages' conduct prior to filing suit. However, the court noted:

Although the parties have not addressed this issue in their briefing, it would appear that plaintiffs' good faith participation in discovery during this lawsuit may have satisfied the conditions precedent contained in the insurance policy. If that is the case, [AFI] would be obligated to extend insurance coverage or

deny the plaintiffs' claim. A denial of plaintiffs' claim could then appropriately be challenged by the plaintiffs if necessary.

{¶ 11} This appeal followed, with the Savages assigning as error the following:

1. The trial court erred in sustaining appellants' motion for summary judgment and otherwise being careful to resolve doubts and construe evidence in favor of the non-moving party. (sic)

2. The trial court erred in failing to enforce an agreement between the parties that this case would go forward after appellants produced their tax returns.

3. The trial court erred in failing to rule on appellants' complaint for declaratory judgment filed on September 15, 2006, inasmuch as it was never addressed in the court's decision.

{¶ 12} We review a summary judgment de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711, 622 N.E.2d 1153. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41–42, 654 N.E.2d 1327.

{¶ 13} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264.

{¶ 14} Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of

the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 15} In their first assignment of error, the Savages assert that the trial court should not have found as a matter of law that the Savages breached the contract with AFI. Citing *FT Mtg. Cos. v. Williams* (Oct. 22, 2001), Fayette App. No. CA2000–09–023, 2001 WL 1256360, the Savages claim that whether an insured has violated a cooperation clause in an insurance policy is a question of fact for the jury. Based on the parties' dispute over what needed to be provided, and the time that had passed before AFI asked for tax returns, the Savages claim that an issue of fact exists as to which party breached the contract.

{¶ 16} AFI has argued that what is at issue is technically not a "cooperation clause," which refers to an insured's duty to cooperate in defending a claim. Rather, the policy contains several conditions precedent setting forth the policy-holder's duties and obligations when making a claim for property loss. The policy provides:

19. **What You Must Do In Case of Loss**. In the event of a loss to property that this insurance may cover, you and any person claiming coverage under this policy must:

\* \* \*

d.   as often as **we** reasonably require:

(1) show **us** the damaged property before permanent repairs or replacement is made;

(2) provide **us** with records and documents **we** request and permit **us** to make reasonable copies;  and

(3) let **us** record **your** statements and submit to examinations under oath by any person named by **us**, while not in the presence of any other **insured**, and sign the transcript of the statements and examinations.

(Emphasis sic.)

{¶ 17} In addition to the conditions precedent, AFI notes that their policy contains a general clause setting forth a duty to cooperate.

{¶ 18} AFI argues that in cases in which insureds failed to provide tax returns or submit to examinations under oath in arson investigations or theft investigations, the courts have found a material breach resulting in prejudice to the insurance company.

{¶ 19} In *Moore v. State Farm Fire & Cas. Co.* (Dec. 3, 1985), Montgomery App. No. 9200, 1985 WL 62876, an arson case, the court of appeals concluded that tax returns are material and admissible as a defense to liability in order to clarify

the insured's financial situation and to shed light on a possible motive. However, each case must be decided on its own merits, and there must be a determination as to whether a willful failure to produce the returns rises to a substantial and material breach of the policy's cooperation clause resulting in prejudice to the insurer.

{¶ 20} In *Ameduri v. Buckeye Union Ins. Co.* (Apr. 28, 1989), Mahoning App. No. 88 C.A. 13, 1989 WL 49500, the insured reported that his home had been burglarized and personal property stolen. The insurance company denied the claim, and the matter proceeded to trial. The court of appeals affirmed the verdict in favor of the insurance company and concluded that the insured's failure to furnish copies of his income tax returns violated the cooperation clause of the policy.

{¶ 21} In *Gabor v. State Farm Mut. Auto. Ins. Co.* (1990), 66 Ohio App.3d 141, 143, 583 N.E.2d 1041, the insurer suspected arson and denied a claim for an automobile that had been destroyed by fire. The policy owner refused to provide his income tax returns. The court ruled that when an insured party fails to comply with a cooperation clause, "the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate." Whether the insurer is relieved of further obligation depends on the prejudice to the insurer resulting from the information that is withheld.

{¶ 22} In *FT Mtge.*, another arson case, the insured refused to submit to an examination under oath, citing her Fifth Amendment right against self-incrimination, or to provide financial records, claiming they were all destroyed by the fire. The court ruled that the insurance company had no obligation to pay her claim because of her refusal to cooperate.

{¶ 23} Turning to the present case, we note that although the Savages questioned the need to provide their tax returns, it is clear that under the clause quoted above, submitting to an examination under oath and providing relevant financial records were conditions of the contract. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement of the Law 2d, Contracts (1981)160, Section 224.

{¶ 24} The requested tax returns were relevant to assessing the Savages' financial condition and to clarify the large discrepancy between the personal property in their possession at the time of bankruptcy versus their personal property at the time of the burglary. See *Johnson v. Allstate Ins. Co.*, Trumbull App. No. 2001–T–0127, 2002-Ohio-7165, 2002 WL 31862234 (financial information requested by Allstate was material to determine whether appellant had a motive to misrepresent the nature or extent of damage resulting from an explosion).

Therefore, AFI was not obligated to perform under the contract until the Savages satisfied the conditions precedent by providing their tax returns and by Rebecca Savage submitting to an examination under oath. Consequently, the Savages were unable to prevail on their breach-of-contract claim, and summary judgment in favor of AFI was appropriate.

{¶ 25} A review of the record shows that the trial court did not decide that the Savages had breached the contract. Rather, the trial court decided that AFI had *not* breached the contract. In the above-cited cases, the insurance companies had denied the claims of the person filing suit. Here, the undisputed facts show that throughout the pendency of the action, AFI had neither granted nor denied the Savages' claim. Prior to suit, AFI informed the Savages that "American Family Insurance Company is continuing to investigate this claim for insurance proceeds that Kelly and Rebecca Savage have submitted." In a letter dated February 24, 2006, AFI unequivocally stated: "We have not denied your clients' claim." In a letter dated February 28, 2007, the parties were negotiating a settlement that would result in reconsideration of the Savages' claim if the requested information was provided. Finally, the trial court noted that "[a]lthough the parties have not addressed this issue in their briefing, it would appear that plaintiffs' good faith participation in discovery during this lawsuit may have satisfied the conditions precedent contained in the insurance policy."

{¶ 26} Viewing these facts in a light most favorable to the nonmoving party, we conclude that the Savages' failure to fulfill the conditions of the policy was not prejudicial to AFI because as late as February 28, 2007, AFI was ready, willing, and able to reconsider the Savages' claim if the requested materials were provided. The result of the trial court's decision was to put the parties "back to square one" in the matter.

{¶ 27} Based on the record before us, the trial court did not err in granting summary judgment because the Savages were unable to prevail on their breach-of-contract claim, as they had yet to fulfill certain conditions. Accordingly, the first assignment of error is not well taken.

{¶ 28} This leads us to the second assignment of error, in which the Savages argue that the trial court erred by overruling their motion to enforce agreement. In February 2007, the parties were discussing dismissal of the lawsuit in an attempt to "go back to square one with this matter." Id. AFI wrote that it would reconsider the claim if the Savages dismissed the lawsuit, produced their tax returns, produced Rebecca Savage for an examination under oath, and signed a nonwaiver agreement.

{¶ 29} On April 3, 2007, counsel for AFI wrote to ask whether the case was going to settle or whether they needed to undertake discovery. Counsel for the

Savages wrote back on April 5, 2007, stating: "I believe presently we need to continue with discovery as your letter of April 3, 2007, suggests. Per your prior correspondence, will you provide the two individuals you identified and forward to me your insurance file which you believe is not protected from discovery."

{¶ 30} It is clear from this correspondence that the Savages never accepted AFI's settlement counteroffer. The letter of February 28, 2007, was not a settlement agreement, but rather a counteroffer to the request to "go back to square one." Instead of accepting the offer of settlement, the Savages requested further discovery demonstrating that they intended to proceed with the lawsuit. There being no evidence of a valid acceptance of an offer to settle, there was no agreement to enforce. The second assignment of error is not well taken.

{¶ 31} In their third assignment of error, the Savages claim that the trial court failed to declare their rights under the contract, specifically whether it was unreasonable to require the production of tax records at such a late date after the burglary.

{¶ 32} The trial court's decision granting summary judgment in favor of AFI disposed of this issue. The trial court stated as follows:

> The relevant insurance contract provisions required both plaintiffs to submit to examinations under oath and to provide documents. Because plaintiffs failed to do so, the court concludes that AFIC had no contractual obligation to provide the plaintiffs with insurance coverage at the time this lawsuit was filed.

{¶ 33} By finding that the Savages had failed to comply with certain conditions precedent to the policy, the trial court impliedly found that those conditions were reasonable as a matter of law. Therefore, the Savages could not show breach of contract and could not enforce the policy. At that point, the issue of whether AFI was unreasonable in waiting to ask for the tax returns became moot. In addition, the evidence produced by AFI that the request for the tax returns came nine days after Kelly Savage's examination under oath was uncontroverted and can hardly be construed as unreasonable. The third assignment of error is not well taken.

{¶ 34} Based on the foregoing, the three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

PETREE and BRYANT, JJ., concur.

T. BRYANT, J., retired, of the Third Appellate District, sitting by assignment.