[Cite as *Little v. Real Living HER*, 2014-Ohio-5664.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Melissa J. Little, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 13AP-924 |
| v. | : | (C.P.C. No. 11CVH09-11254) |
| Real Living HER et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 23, 2014

*Pamela L. Pinchot*, for appellant.

*Karl H. Schneider* and *Mark R. Meterko*, for appellees Real Living HER and Kathryn McCann.

*Madison & Rosan, LLP*, and *Darcy A. Shafer*, for appellee NRT Columbus, LLC d/b/a Coldwell Banker King Thompson.

*Dickinson Wright PLLC*, and *Michael V. Passella*, for appellee Keith Saddoris.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1}  Plaintiff-appellant, Melissa J. Little, appeals a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendants-appellees, Real Living HER, Coldwell Banker King Thompson ("CBKT"), Kathryn McCann, and Keith Saddoris.  For the following reasons, we affirm.

{¶ 2}   In March 2008, Saddoris listed his house for sale for $489,000.  McCann, who was then associated with CBKT, was Saddoris' real estate salesperson.[1]  McCann had difficulty selling the house, despite lowering the sales price.  Ultimately, Saddoris decided to attempt a short sale because the amount he owed on his mortgage exceeded the expected sales price of his home.  To achieve a short sale, Saddoris needed to obtain his mortgage holder's consent to release its mortgage lien on the house even though the sale proceeds would not fully satisfy the mortgage loan balance.

{¶ 3}   On April 21, 2009, Little submitted an offer on Saddoris' house.  The offer was in the form of a "Real Estate Purchase Contract," executed by Little, that included a term setting the purchase price at $230,000.  The contract also provided, under the heading "Additional Terms and Conditions," "[s]ubject to bank approval, Buyers understand that this is a bank short sale."  Saddoris accepted Little's offer by executing the contract.

{¶ 4}   On April 26, 2009, Saddoris received a second offer to purchase his house. The second offer was for $295,000, although the potential buyers later reduced the offer to $267,000.  Saddoris accepted the offer by executing the real estate purchase contract the potential buyers submitted to him.  Unlike his contract with Little, this contract included a "Short Sale Addendum to the Residential Real Estate Purchase Contract," which included terms relevant to the short sale process.  In relevant part, the addendum stated that:  (1) the contract was contingent "upon a written agreement between the Seller and Seller's creditor(s), acceptable to both, to sell the premises for less than the loan amount(s) as a short sale," and if the seller and his creditor could not agree, then the real estate purchase contract would "be deemed terminated due to the unfulfilled short sale contingency," (2) the seller agreed to submit a copy of the contract and all other necessary documentation to his creditor within ten days of acceptance of the offer, and (3) the seller could continue to market the property despite acceptance of the buyer's offer.

{¶ 5}   Saddoris received a third, and final, offer on May 29, 2013.  The potential buyers offered to pay $275,000 for the house.  Saddoris accepted the third offer by executing the real estate purchase contract the potential buyers submitted to him.  This

---

[1] Saddoris initially executed an exclusive right to sell listing contract with CBKT.  In May 2009, McCann left CBKT and became associated with Real Living HER.  Saddoris then signed an exclusive right to sell listing contract with Real Living HER.

third contract included a "Short Sale Addendum to the Residential Real Estate Purchase Contract" identical to the addendum incorporated into the second contract.

{¶ 6} McCann submitted all three contracts to Nationwide Advantage Mortgage Company ("Nationwide"), the servicer for Saddoris' mortgage loan. At that time, the appraised value of Saddoris' house was $275,000. Nationwide assessed Little's offer of $230,000 as too low in relation to the appraised value, so Nationwide did not forward Little's offer to the mortgage holder, Fannie Mae. Nationwide deemed the highest offer— for $275,000—acceptable and submitted the contract containing that offer to Fannie Mae. Fannie Mae approved that contract.[2]

{¶ 7} Subsequent to Fannie Mae's approval, the buyers' lender appraised Saddoris' house at $240,000. The buyers then offered to purchase the house for the appraised value, and Saddoris accepted. Fannie Mae approved the reduced purchase price, and the house sold for $240,000.

{¶ 8} On September 8, 2011, Little filed suit against Saddoris for breach of contract, and against McCann, CBKT, and Real Living HER for tortious interference with contract. After discovery, each defendant filed a summary judgment motion. In a judgment dated October 1, 2013, the trial court granted those motions.

{¶ 9} Little now appeals the October 1, 2013 judgment, and she assigns the following error:

> THE TRIAL COURT ERRED IN GRANTING DEFE[N]DANTS-APPELL[EE]S' MOTION FOR SUMMARY JUDGMENT. THE PLEADINGS, DEPOSITIONS, RESPONSES TO DISCOVERY AND AFFIDAVITS IN THIS CASE DEMONSTRATE THAT THERE WERE GENUINE ISSUES OF MATERIAL FACT AND THAT THE DEFENDANTS-APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW. FURTHER, AFTER VIEWING THE FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF-APPELLANT, REASONABLE MINDS COULD HAVE COME TO DIFFERENT CONCLUSIONS AS TO WHETHER DEFENDANT[S]-APPELLEES COMMITTED AN ANTICIPATORY BREACH OF CONTRACT THEREBY

---

[2] The record contains contradictory evidence regarding Nationwide's and Fannie Mae's roles in this case. The majority of the evidence indicates that Nationwide was the servicer of Saddoris' mortgage loan for Fannie Mae, the mortgage holder. However, one affiant identifies Nationwide as the mortgage holder. Although this presents a genuine issue of fact, it is not material to the legal analysis that determines the outcome of this case.

RELIEVING THE PLAINTIFF-APPELLANT OF ANY DUTY TO FULFILL A CONDITION PRECEDENT TO THE CONTRACT.

{¶ 10} A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 11} We will begin our analysis with Little's claim that Saddoris breached the real estate purchase contract by entering into two additional contracts to sell his house. Saddoris contends that he cannot be liable for breach of contract because a condition precedent—the bank's approval of the contract—never occurred. According to Saddoris, the nonoccurrence of the condition precedent rendered the contract unenforceable. In response, Little argues that Saddoris' repudiation of his promise to sell her the house excused the performance of the condition precedent. Therefore, Little maintains, the condition precedent did not need to occur for Saddoris' obligation to sell to her to become due.

{¶ 12} A condition precedent is " 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.' " *Savage v. Am. Family Ins. Co.*, 178 Ohio App.3d 154, 2008-Ohio-4460, ¶ 23 (10th Dist.), quoting Restatement of Law 2d, Contracts, Section 224 (1981). Thus, the occurrence of conditions precedent, unless excused, is necessary to activate the promisor's contractual duties. *Morrison v. Bare*, 9th Dist. No. 23667, 2007-Ohio-6788, ¶ 18; *accord* 2 Farnsworth, *Farnsworth on Contracts*, Section 8.2, at 415 (3d Ed.2004) ("The obligor need not render performance until the occurrence of the event on which the obligor's duty

is conditioned."). Nonoccurrence of a condition precedent discharges all duty to perform under the contract. *Campbell v. George J. Igel & Co., Inc.*, 4th Dist. No. 13CA4, 2013-Ohio-3584, ¶ 13; *Corey v. Big Run Indus. Park, LLC*, 10th Dist. No. 09AP-176, 2009-Ohio-5129, ¶ 18; Restatement, Section 225(2). Consequently, the general rule is that, without the occurrence of conditions precedent, a promisor has no liability for breach of contract. *Garrett v. Ohio Farmers Ins. Co.*, 11th Dist. No. 2003-L-182, 2005-Ohio-413, ¶ 32-33; *Lindley v. Weinberg*, 4th Dist. No. 1313 (Dec. 9, 1986); *Combs v. Simkow*, 12th Dist. No. CA82-12-0116 (Nov. 21, 1983); *accord Kandel v. Gran*, 5th Dist. No. CA-5475 (June 17, 1981) ("[A] contract, fulfillment of which * * * is made to depend on act or consent of [a] third person, over whom neither party has any control, cannot be enforced, unless such act is performed or consent given.").

{¶ 13} However, there are exceptions to the general rule. Liability can arise, even absent the occurrence of a condition precedent, if a promisor excuses that condition. A promisor "may excuse a condition of its duty by committing a breach that causes the nonoccurrence of the condition. When the condition is excused, the [promisor's] duty becomes absolute." 2 Farnsworth at 453-54, Section 8.6. Thus, " '[a] repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent.' " *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, ¶ 26 (10th Dist.), quoting 10 Murray, *Corbin on Contracts*, Section 54.19, at 256 (Rev.Ed.2014); *accord White Hat Mgt., L.L.C. v. Ohio Farmers Ins. Co.*, 167 Ohio App.3d 663, 2006-Ohio-3280, ¶ 22 (9th Dist.); *Bennett v. Fier*, 2d Dist. No. 97-CA-116 (July 2, 1998); *Livi Steel, Inc. v. Bank One, Youngstown, N.A.*, 65 Ohio App.3d 581, 586 (11th Dist.1989). Repudiation[3] negates the need to perform conditions precedent because performance after repudiation would be futile and the law does not require performance of a futile act. *White Hat Mgt., L.L.C.* at ¶ 24; *Livi Steel, Inc.* at 586. If the promisor is not going to keep its promise in any event, then it is useless to perform the condition

---

[3] A "repudiation" includes " 'a voluntary affirmative act which renders the obligor unable or apparently unable to perform without [ ] a breach [that would of itself give the promisee a claim for damages for total breach].' " *White Hat Mgt., L.L.C.* at ¶ 22, quoting Restatement, Section 250(b). A repudiation may also be called an anticipatory breach.

precedent, and the promisor becomes liable without performance of the condition precedent. 13 Lord, *Williston on Contracts*, Section 39:39 (4th Ed.1993).

{¶ 14} Whether a party's repudiation excuses the occurrence of a condition precedent turns on whether the repudiation "contribute[s] materially to the non-occurrence of the condition." Restatement, Section 255; *accord* 2 Farnsworth at 458, Section 8.6 ("[T]he breach that excuses a condition must be causally connected to its nonoccurrence."). "[I]f the condition would not have occurred in any event, its non-occurrence is not excused. In such a case both parties are discharged." Restatement, Section 255, Comment a. Therefore, to recover damages for a repudiation, "a promisee must prove that all conditions precedent to performance would have been performed" had the promisor not repudiated. Lord at Section 63:6; *accord* 2 Farnsworth at 459, Section 8.6, fn. 17 (Supp.2013-1) (" '[I]f the promisee could not or would not have performed the condition, or it would not have happened whatever had been the promisor's conduct, the condition is not excused.' ").

{¶ 15} Here, Little and Saddoris agree that their contract contains a condition precedent, i.e., the requirement that Saddoris' bank approve the contract. Saddoris maintains that, because that condition precedent never occurred, his duty to sell to Little never became due. Thus, Saddoris reasons, he could not breach the contract by not selling. Little, on the other hand, argues that Saddoris repudiated the contract and, thus, excused the condition precedent. Little contends that Saddoris repudiated their contract when he entered into two other contracts to sell his house. Due to this repudiation, Little asserts, Saddoris' duty to sell her the house became absolute and he breached that duty.

{¶ 16} In order for Saddoris' repudiation to excuse the condition precedent, that repudiation (the signing of the other two contracts) must have led to the nonoccurrence of the condition (the bank's approval).[4] Thus, for Little's claim for breach of contract to survive summary judgment, the record must contain evidence that the existence of the other two contracts caused Nationwide to reject Saddoris' contract with Little. The record, however, lacks any such evidence. Barbara Hanson, a senior loss mitigation specialist for Nationwide, testified in her affidavit that Nationwide did not approve Little's

---

[4] Saddoris does not dispute that he repudiated his contract with Little when he executed the other two contracts. We, therefore, do not address whether Saddoris' actions qualify as a repudiation.

offer because it was simply "too low for approval." (Hanson affidavit, at ¶ 7.) Little speculates that Nationwide would have approved her offer if it did not have before it any higher offers, but she fails to set forth any evidence to support that speculation. Consequently, due to the lack of evidence that Nationwide would have approved Little's offer even if Saddoris had not repudiated, the condition precedent remains in effect. Because that condition precedent did not occur, Saddoris' duty to sell Little his house never came due. Saddoris, therefore, did not breach the contract by selling his house to someone else.

{¶ 17} We next turn to Little's claim that McCann, CBKT, and Real Living HER tortiously interfered with her contract with Saddoris. To prove a claim of tortious interference with contract, a plaintiff must establish: (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171 (1999), paragraph one of the syllabus. Embedded in the third element is the requirement that there be a breach of a contract. *Pannozzo v. Anthem Blue Cross and Blue Shield*, 152 Ohio App.3d 235, 2003-Ohio-1601, ¶ 19 (7th Dist.); *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 1st Dist. No. C-010133 (Mar. 22, 2002). Here, as we concluded above, the record contains no evidence showing that Saddoris breached his contract with Little. Consequently, McCann, CBKT, and Real Living HER did not tortiously interfere with that contract.

{¶ 18} For the foregoing reasons, we conclude that the trial court did not err in granting appellees summary judgment on Little's claims. We thus overrule Little's sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

_____