[Cite as *Eckman v. Ramunno*, 2010-Ohio-4316.]


STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT


| | | |
|---|---|---|
| ROSEMARIE ECKMAN, | ) | |
| | ) | CASE NO.   09 MA 162 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| SAMUEL RAMUNNO, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |


CHARACTER OF PROCEEDINGS:      Civil Appeal from Common Pleas Court, Case No. 07CV3883.

JUDGMENT:      Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellee:      Attorney Andrew George
Attorney Steven Elder
731 Fife Avenue
Wilmington, Ohio  45177

Attorney Damian DeGenova
42 North Phelps Street
Youngstown, Ohio  44503

For Defendant-Appellee:      Attorney Matthew Fekete
725 Boardman-Canfield Road, Unit L-1
Youngstown, Ohio  44512

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Frank D. Celebrezze, Jr., Judge of the Eighth District
     Court of Appeals, Sitting by Assignment.


Dated:  September 10, 2010

VUKOVICH, P.J.

¶{1} Defendant-appellant Samuel Ramunno appeals the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of plaintiff-appellee Rosemarie Eckman on her adverse possession claim and thus quieted title of a portion of Ramunno's property to Eckman. Ramunno argues that Eckman and her predecessors' use of his property was permissive. Eckman contends that the use was adverse. For the following reasons, there exists a genuine issue of material fact as to whether the use was adverse or permissive. Consequently, the trial court's grant of summary judgment for Eckman is reversed, and the case is remanded for further proceedings.

STATEMENT OF THE CASE

¶{2} On October 17, 2007, Rosemarie Eckman filed suit against her neighbor, Samuel Ramunno. Her complaint disclosed that she purchased her Lowellville property in 1992 at which time a survey incorrectly showed that her attached garage was well off the neighbor's property line. A 2006 survey revealed that a small corner of her garage and nearly half of a twenty-two foot long sidewalk (that she installed) rest on Ramunno's property. Eckman's complaint asked to be granted quiet title over the property underlying the encroaching portions of her garage and sidewalk on the grounds of adverse possession. She attached the surveys to her complaint.

¶{3} Ramunno filed his answer denying the elements of adverse possession and a counterclaim seeking an injunction ordering Eckman to remove the encroachments from his property. Eckman responded by asserting a claim under the Occupying Claimant's Law in case that her adverse possession case fails and she is ordered to vacate. See R.C. 5303.07 and R.C. 5303.08 (dealing with eviction of occupying claimant after owner pays for improvements); R.C. 5303.14 (dealing with owner's tendering of title to the occupier in return for the unimproved value of the land).

¶{4} Eckman filed a partial motion for summary judgment only as to whether she acquired title to the land underlying the garage by way of adverse possession, expressly omitting the issue of the sidewalk from her motion. She attached the two surveys and the affidavit of a prior landowner stating that the garage existed for more

than twenty-one years. She alleged that there was no genuine issue of material fact that she had established by clear and convincing evidence that the use of the property underlying the garage was open, exclusive, notorious, adverse, and continuous for a period of at least twenty-one years.

¶{5}   Ramunno opposed this motion and filed his own motion for summary judgment. In seeking summary judgment, he first alleged that twenty-one years had not passed since the sidewalk had been put in, requiring summary judgment for him on Eckman's adverse possession claim in her complaint regarding the sidewalk. He attached his own affidavit noting that he inherited his property in 1993 from his father and stating that Eckman installed the sidewalk after she purchased the property in 1992. He also stated that an easement had never been granted for the sidewalk.

¶{6}   Regarding the garage, he contested only the element requiring that the use be adverse or hostile, insisting that the use was permissive. He then cited law for the proposition that permissive use cannot ripen into adverse use merely due to the passage of time. In support, he attached the affidavit of the original owner of the garage, Mr. Innocenzi, who had purchased the property in the early 1950's from Ramunno's father, who owned both lots at the time. Mr. Innocenzi stated that while his garage was being built in the late 1950's or early 1960's, Ramunno's father advised him that the corner of it rested on Ramunno's property. Mr. Innocenzi said that they were good neighbors and that he had no intent to encroach on his neighbor's land. His affidavit disclosed:

¶{7}   "We talked over the situation and I offered to pay for the property, but Mr. Ramunno said it wasn't necessary and it wasn't a problem and that was the way the matter was left.

¶{8}   "Based on our discussion, I feel that Mr. Ramunno gave me his permission to leave that garage corner on his land."

¶{9}   Eckman replied by arguing that Ramunno cannot claim permissive use now because his answer and counterclaim admitted that the use was not permissive. Eckman quoted portions of these filings, which she claimed supported her waiver argument. In the alternative to this waiver argument, Eckman claimed that even if the use was originally permissive, Mr. Innocenzi's affidavit only covers the period from the

original use until 1968, when he moved.  Eckman urged that there must be evidence of permissive use in the past twenty-one years.

¶{10} Eckman attached a letter she received from Ramunno in February of 2007, prior to the filing of the lawsuit.  This was written in response to a threat from her lawyer that she would sue Ramunno if he did not sign over an easement.  Regarding the sidewalk, the letter asks her to remove it.  Regarding the garage, the letter does not seek removal and instead refers to his "family's generosity and tolerance over the last 50 years to the half dozen owners" of her property and advises her to disclose the encroachment to any new buyers.

¶{11} As to the waiver argument, Ramunno replied that his answer's denial of the portion of Eckman's complaint stating that the use was adverse is the same as saying that the use was permissive.  He also urged that his use of the word encroachment in his counterclaim did not admit that the use was not previously permissive.  In response to Eckman's claim that Mr. Innocenzi's affidavit was not relevant to the past twenty-one years, he reiterates his position that permissive use cannot ripen into adverse use merely due to the passage of time.

¶{12} In the alternative, he stated that permission was expressed to each new neighbor that occupied the encroaching garage.  In support, he submitted his own affidavit stating that he lived on his property most of his life as he grew up there and then inherited it from his father.  He reiterated that it was no secret that his father had given Mr. Innocenzi permission to finish constructing the encroaching garage on his property.  He revealed that his father always pointed out the encroachment to new occupiers and let them know that he was permitting them to keep it there.  Ramunno stated that when he inherited the property, he continued his father's practice and advised Eckman that the garage encroached upon his property, that he was permitting her to maintain its position, but that she could not further encroach onto his property.  His affidavit also pointed to a letter he wrote, which Eckman had attached to her last filing, as evidence that the use was permissive.

¶{13} On March 6, 2009, a magistrate granted summary judgment to Eckman, quieting title to Eckman over her garage encroachment.  Notably, her motion only dealt with the land underlying the garage.  However, in describing the land taken by adverse

possession, the decision refers to land circled and labeled in a survey attached to Eckman's motion for summary judgment; this includes not only the small garage corner but also the encroaching portion of the sidewalk and seemingly a small strip of land surrounding these encroachments.

¶{14} In support of its adverse possession decision, the magistrate first ruled that Ramunno waived the right to argue permissive use by failing to plead it in his answer. The magistrate also construed various statements in his answer and counterclaim as admissions. In the alternative, the magistrate set forth three reasons why Ramunno allegedly failed to meet his burden to prove by the preponderance of the evidence that the use was permissive. First, the magistrate held that Ramunno was required to show permission within the relevant twenty-one-year period, not merely at the origination of the use. Second, the magistrate stated that even if permissive use at the origination is sufficient, there is no evidence of permissive use here because mere allowance of use through laziness, indifference, or neighborly accommodation is not sufficient to invoke the permissive use doctrine. Third, the magistrate stated that adverse possession could be imposed in any event due to the equities involved.

¶{15} Ramunno filed timely objections responding to each of the reasons set forth by the magistrate. On August 27, 2009, the trial court overruled Ramunno's objections and upheld the magistrate's decision. Specifically, the court opined that Eckman met her burden to show that the use by her and her predecessors was adverse and that Ramunno failed to meet his reciprocal burden of demonstrating that there was a genuine issue of material fact, finding that there was no evidence of permissive use in the twenty-one years prior to the proceedings. In the alternative, the court held that Ramunno failed to raise the affirmative defense of permissive use in his answer and thus waived the defense. The trial court granted quiet title over the same land as did the magistrate.

¶{16} Ramunno filed timely notice of appeal. Ramunno's brief sets forth the following assignment of error:

¶{17} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT UPON HER CLAIMS FOR

ADVERSE POSSESSION AND QUIETING OF TITLE, AND IN DENYING APPELLANT'S CROSS MOTION FOR SUMMARY JUDGMENT UPON HIS CLAIMS TO QUIET TITLE."

¶{18} As there are various distinct lines of analysis existing herein, we shall divide our analysis of the threshold issues for clarity.

GENERAL LAW

¶{19} Pursuant to Civ.R. 56(A) and (B), a party seeking to recover on a claim or a party defending against a claim, may move with or without supporting affidavits for summary judgment. Summary judgment can be granted only where there remains no genuine issue of material fact for trial and where, after construing the evidence most strongly in favor of the nonmovant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith*, 110 Ohio St.3d 124, 2006-Ohio-3455, ¶10, citing Civ.R. 56(C).

¶{20} The burden of showing that there is no genuine issue of material fact falls upon the party who files for summary judgment. Id., citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294. Thereafter, the nonmovant may not rest upon mere allegations or denials of the party's pleadings but must respond by setting forth specific facts showing that there is a genuine issue for trial. Id., citing Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

¶{21} "[T]o acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch* (1998), 81 Ohio St.3d 577, 580. The elements are stringent, and the ancient doctrine is currently disfavored due to the uncompensated loss of property rights of the landowner. Id. A failure of any element defeats a claim for adverse possession. Id at 579. The only element contested regarding the land underlying the garage is the adversity element.

¶{22} Possession is not adverse if it is done with the owner's permission (or license). *Mosesson v. Rach* (Mar. 28, 2001), 7th Dist. No. 99CA321; *Willett v. Felger* (Mar. 29, 1999), 7th Dist. No. 96CO40; *Coleman v. Pendello* (1997), 123 Ohio App.3d 125, 130 (7th Dist.). See, also, *Pavey v. Vance* (1897), 56 Ohio St. 162, ¶1 of syllabus

(use without permission is adverse even if the use is known to the owner).  In *Grace*, the Supreme Court held that where the claimant previously had permission to mow the neighbor's strip, his adverse possession claim cannot be based on such act of mowing.  *Grace*, 81 Ohio St.3d at 582.

**¶{23}** It has been stated that if the occupying claimant has set forth a prima facie case that the use is adverse, then the landowner has the burden of showing by a preponderance of the evidence that such a grant of permission was actually made.  See *Goldberger v. Bexley Props.* (1983), 5 Ohio St.2d 83, 84; *Pavey v. Vance* (1897), 56 Ohio St. 162, 174 (placing the burden on the landowner to prove permission on the grounds that the burden is rarely placed on the party holding the negative in civil suits); *Gulas v. Tirone*, 184 Ohio App.3d 143, 2009-Ohio-5076, ¶23; *Willett*, 7th Dist. No. 96CO46 (all dealing with prescriptive easements).[1]

**¶{24}** However, notwithstanding the First District's statement in *Grace* that the burden shifts to the landowner to prove permissive use, the Supreme Court did not reiterate this holding upon reviewing the appellate decision.  Instead, the Court only spoke of the occupant's burden by clear and convincing evidence to prove all the elements, even though there were claims of permissive use and even though the Court specifically found that the landowner's permission given to the occupier to mow did not ripen into an adverse use.  *Grace*, 81 Ohio St.3d at 582.

**¶{25}** Due to this and the mere fact that permissive is the opposite of the adversity element of the plaintiff's case, there may no longer be a burden on the landowner to prove permissive use.  That is, the 1998 *Grace* holding may have abrogated the prior case law imposing such a burden.  However, until the Supreme Court expressly abrogates its *Goldberger* and *Pavey* cases, we maintain our post-*Grace* position set forth in *Gulas* that the landowner has the burden to prove permissive use by a preponderance of the evidence after the occupier has set forth a prima facie case of adverseness.

---

[1]A prescriptive easement does not require exclusivity, as does adverse possession, but the remaining elements are the same.  See *Pennsylvania RR Co. v. Donovan* (1924), 111 Ohio St.3d 341, 349-350.  As such, various holdings regarding the remaining elements in prescriptive easement cases have been extended to adverse possession cases.

**¶{26}** In any event, it is merely a burden of proof by preponderance of the evidence after the occupier has set forth a prima facie case. *Goldberger*, 5 Ohio St.3d at 84 (landowner's burden under *Pavey* to prove that a use was permissive does not arise until burden initially satisfied by occupier to prove legally adverse use of land). Further, it appears that once some evidence of permission is presented, the landowner will have rebutted the prima facie case and transferred the burden of persuasion by clear and convincing evidence back to the occupier. See, e.g., *Cyrus Investors, Inc. v. Huffman* (Nov. 26, 1991), 10th Dist. Nos. 91AP-373, 91AP-451, fn.7 (there is a rebuttable presumption of adversity if all elements are shown to have existed for a required time, which shifts the burden of going forward to the owner to present some evidence of permission but leaves the ultimate burden of persuasion on the occupier). See, also, *Grace*, 81 Ohio St.3d at 582 (burden on adverse possession claimant to show adversity by clear and convincing evidence).

**¶{27}** Still, it must be pointed out that these are burdens applicable to trial, whereas this case is at the summary judgment stage, at which point there must merely exist a genuine issue of material fact on the elements in order defeat a request for summary judgment. As will be discussed there is a genuine issue of material fact for trial here which preclude summary judgment for either party regarding the land underlying the garage.

**¶{28}** The occupier can meet his initial burden on the adversity element by merely showing that a permanent structure was built on his neighbor's land. See, e.g., *Board of Edn. v. Nichol* (1942), 70 Ohio App. 467, 473 (7th Dist.) (stating that in the absence of a license, the building of a permanent structure on another's land shows adversity or hostility). Contrary to Ramunno's view then, his admission that the disputed portion of Eckman's garage occupied his land was sufficient evidence for Eckman to meet her initial burden to show adversity and to raise a genuine issue of material fact to avoid summary judgment herself. The landowner can rebut this by presenting evidence that the use was permissive, shifting the ultimate burden back to the occupier to prove its case by clear and convincing evidence. As will be shown below, Ramunno did this.

WAIVER

¶{29} Eckman alleges that there exist two reasons why Ramunno waived the right to claim permissive use. First, Eckman quotes portions of Ramunno's answer and counterclaim, which she construes as admissions by Ramunno that the use was hostile. For instance, she asks why Ramunno would seek quiet title or an injunction if the use was permissive and why Ramunno would say the encroachment was unlawful or illegal if it was permissive. As Ramunno points out, merely because the use has always been permissive for purposes of her adverse possession claim, this does not mean that he did not rescind the permission after she threatened to sue him and that he now only seeks to enjoin her free use of his property in order to defend himself against her claim on his title. Moreover, Ramunno does not claim that he ever gave permission to construct the sidewalk, which would further explain his terminology.

¶{30} Eckman also states that paragraph 7 of Ramunno's answer admits the adversity element. To the contrary, this paragraph denies paragraph 7 of the complaint, which claimed that the encroachment was "open, notorious, exclusive, continuous and adverse to the interest of Defendant Samuel Ramunno and has been for a period greater than 21 years." By denying this paragraph, Ramunno sufficiently denied all elements, including the adversity element. See Civ.R. 8(B) (regarding the contents of an answer). Thus, his answer and counterclaim do not admit to the twenty-one years of adversity.

¶{31} Second, Eckman claims that permissive use is a landowner's affirmative defense to an occupier's adverse possession claim, which must be affirmatively set forth in the answer or it is waived. Civ.R. 8(C) provides in pertinent part:

¶{32} "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense."

¶{33} An affirmative defense is in the nature of a confession and avoidance as it admits the plaintiff has a claim but asserts a legal reason why the plaintiff cannot recover on it. *State ex rel. Plain Dealer Pub. Co. v. Cincinnati* (1996), 75 Ohio St.3d

31, 33 (holding that exceptions to the Public Records Act are not in the nature of confession and avoidance because the assertion of an exception does not admit the allegations are true, i.e. it does not admit that the requested records are "public"). An affirmative defense attacks the legal right to bring a claim but does not attack the truth of the claim. *RC Olmstead, Inc. v. GBS Corp.*, 7th Dist. No. 08MA83, 2009-Ohio-6808, ¶41.

¶{34} It is more than a mere denial or contradiction of evidence but is a substantive or independent matter which the defendant claims exempts him from liability even if the facts of the complaint are conceded. Id., citing *State v. Poole* (1973), 33 Ohio St.2d 18, 19. Thus, where a defendant claims that an element of the plaintiff's case is lacking, an affirmative defense is not asserted. Id. at ¶38, 40-42 (holding that the defense that one's signature was forged merely denies the element of the contract's existence), citing e.g. *Schneider v. Schneider*, 178 Ohio App.3d 264, 2008-Ohio-4495 (gift defense is not affirmative defense as it merely denies plaintiff's contract claim).

¶{35} Here, Ramunno is not saying that the adversity or hostility element is satisfied (confession) and that there is another reason why he should not lose his property (avoidance). Rather, he is disputing the element of adversity or hostility. Adversity requires a lack of permission because if the use was permissive, then the use was not adverse. See *Grace*, 81 Ohio St.3d at 582 (where the claimant previously asked permission to mow the neighbor's strip, his adverse possession claim cannot be based on such act of mowing). See, also, *Mosesson*, 7th Dist. No. 99CA321; *Willett*, 7th Dist. No. 96CO40; *Coleman*, 123 Ohio App.3d 125, 130 (7th Dist.) (possession is not adverse if it is done with the owner's permission).

¶{36} Thus, a claim that permission exists for the use is not an affirmative defense but is a regular defense that is sufficiently raised by the denial of the plaintiff's claim that the use was adverse (an element of the plaintiff's case). As such, the trial court erroneously granted summary judgment to Eckman on this basis. We now turn to the alternative reasons given by the trial court in granting summary judgment to Eckman.

<u>ORIGINAL PERMISSION TO USE</u>

**¶{37}** Appellant complains that the magistrate failed to recognize that Mr. Innocenzi's affidavit showed that the original use was permissive. That is, this affidavit states that during construction, the landowner advised the occupier that a corner of the garage was on his land. They were "good neighbors," and the occupier offered to buy the small portion of land as he did not wish to encroach. However, the landowner said "it wasn't necessary and it wasn't a problem and that was the way the matter was left." Mr. Innocenzi characterized this discussion of the unintentional encroachment as the landowner's grant of "permission to leave that garage corner on his land."

**¶{38}** Contrary to the magistrate's characterization, this is not the failure of the landowner to act out of "indifference, laziness, acquiescence, or neighborly accommodation." See *Shell Oil Co. v. Deval Co.* (Sept. 24, 1999), 1st Dist. No. C-980783. Rather, Ramunno presented evidence of actual or express permission. See *Gulas*, 184 Ohio App.3d 143 at ¶25 (implied neighborly accommodation is different than expressly made neighborly accommodation). See, also, *EAC Prop. Ltd. v. Hall*, 10th Dist. No. 08AP-251, 2008-Ohio-6224, ¶8. Thus, appellant has a valid complaint about the magistrate's suggestion that no reasonable person could find that the original use was permissive.

**¶{39}** However, the trial court did not grant summary judgment on this basis. Rather, the court granted summary judgment based upon its belief that the use by Eckman and her predecessors was open, adverse, continuous, and in existence for greater than twenty-one years and that Ramunno presented no evidence of a permissive use in the relevant twenty-one years.

### EXPIRATION OF PERMISSION

**¶{40}** In response to Eckman's claim that original permission to the first occupier is not everlasting where the occupier changes, Ramunno relies upon the following holding: "Permissive use cannot ripen into an easement by prescription no matter how long continued." *Coleman*, 123 Ohio App.3d at 131 (7th Dist.), citing *Monroe Bowling Lanes v. Woodsfield Livestock Sales* (1969), 17 Ohio App.2d 146, 152 (7th Dist.), citing *Elster v. Springfield* (1892), 49 Ohio St. 82, 97 (where the Supreme Court held that if a use is permissive, no permanent right could be acquired through long continuance).

¶{41} We note here that in order to show that the adversity element existed for twenty-one years, the occupier may "tack" his adverse use with the adverse use of his predecessors in privity. *Willett v. Felger* (Mar. 29, 1999), 7th Dist. No. 96CO40, citing *Zipf v. Dalgarn* (1926), 114 Ohio St. 291, 296. Ramunno adopts a tacking-like argument and argues that the landowner's original grant of permission to the first occupier applies to every subsequent occupier, precluding all successors from using the garage corner adversely.

¶{42} However, we refuse to adopt such a broad premise, and we are not cited to any authorities holding that express permission to the first occupier extends to the successor occupiers by implication so that all subsequent occupiers do so permissively. This conclusion is supported by the holding, discussed supra, that permission is not implied through mere knowledge and indifference. See *Gulas*, 184 Ohio App.3d 143 at ¶25 (7th Dist.).

¶{43} We recognize that the Supreme Court's *Elster* case involved a city's original grant of permission to the plaintiff's predecessor to build a water line under a street from a spring to a building. The Court generally stated that if the use was permissive, then it could not change to adverse use by passage of time. *Elster*, 490 Ohio St. at 97. Yet, that case did not mention whether the plaintiff himself occupied the premises for twenty-one years. If not, then the reason behind the court's statement could merely be that the beginning of the twenty-one year period was permissive. In addition, there was mention of some type of renewal after the original 1849 pipe installation.

¶{44} In our *Coleman* case, there was no issue with permission to a prior occupier as the plaintiff was the original occupier (who had deeded the disputed land away). *Coleman*, 123 Ohio App.3d at 131. See, also, *Monroe*, 17 Ohio App.2d at 152 (although this court mentioned that plaintiff's predecessor was permitted to hook onto the water line, plaintiff's continued use was also with permission as plaintiff exchanged the use of the water line for parking spaces). In another case cited by Ramunno, there was also no issue of permission to a predecessor of the occupier. See *Manos v. Day Cleaners & Dryers, Inc.* (1952), 91 Ohio App. 361, 365. Likewise, a Third District case cited by Ramunno did not involve multiple occupiers but only multiple landowners and

dealt with an original landowner who gave permission and who sold his land less than twenty-one years prior to trial. See *Biegel v. Knowlton* (June 20, 1989), 3d Dist. No. 1-87-45. See, also, *Shell Oil Co. v. Deval Co.* (Sept. 24, 1999), 1st Dist. Nos. 980783, 980809 (involving multiple owners but only one occupier).

¶{45} If permission to one occupier remained for all successors of the original occupier, then there would appear to be no meaning to the premise that use with permission interrupts a stream of adversity prior and subsequent thereto. See, e.g., *J.F. Gioia, Inc. v. Cardinal American Corp.* (1985), 23 Ohio App.3d 33, 37-38 (speaking of extinguishing a maturing prescriptive right by the intervening grant of a license to use). As Eckman's brief points out, the Ninth District has opined that permission to an occupier's predecessor does not carry forward to protect the landowner from a subsequent occupier's adverse use. See *Vanasdal v. Brinker* (1985), 27 Ohio App.3d 298. The Eighth District has similarly held:

¶{46} "If the permission once granted expires by its terms, or is otherwise revoked, *or if a new owner neither seeks nor obtains permission, adversity is triggered.*" *Brandt v. Daugstrup* (Nov. 18, 1999), 8th Dist. No. 75065 (emphasis added).

¶{47} Thus, we hold that the landowner's permission needs to be renewed for new occupants, who otherwise could begin establishing an adverse claim on the land when they begin occupation. Although it is true that permission cannot ripen into adversity by mere lapse of time, this concept applies only to those persons to whom the permission was given. Where, for instance, the invited occupier leaves and a wholly new occupier begins possession, the original permissive use is not automatically extended. Rather, the landowner must renew his permission (license) to subsequent occupiers in order to avoid adverse possession and to maintain the express permission. In other words, although prior permissive use of a predecessor is relevant to erase the adversity element for periods within the relevant twenty-one year period, it does not make a current occupier's use permissive.

<u>SUBSEQUENT PERMISSIVE USE</u>

¶{48} Regardless, in this case, Ramunno did present evidence that subsequent permission was granted to subsequent occupiers after the original

permission was given to Mr. Innocenzi.  As aforementioned, evidence established (for purposes of avoiding summary judgment) that the garage builder was given express permission and that he left the property in 1968.  The next landowner was Mr. Hvisdak, who occupied the property from 1968 until 1971.  In support of her claim that the garage existed in the same position for more than twenty-one years, Eckman submitted Mr. Hvisdak's affidavit.  This affidavit made no mention of whether Mr. Hvisdak was expressly permitted to occupy the encroachment by Ramunno's father or whether Rammuno's father was silent on the issue.

¶{49}  Eckman also attached a letter from Ramunno to her summary judgment material, which was written after her attorney threatened to sue him but before the lawsuit was filed.  In this letter, Ramunno made reference to his "family's generosity and tolerance over the last 50 years to the half dozen owners" of Eckman's property. It expressed that the newest survey correctly shows "what we have been telling you all along - that is 'your garage is on my property'."  The letter then stated that she had no permission to construct the sidewalk and asked that she remove it, noting that it was not there when the garage was owned by the Innocenzis, the Hvisdaks, the Hubers, or the Blinskys.

¶{50}  An affidavit of Ramunno himself states that he lived on his property for most of his life starting at age five and that he inherited the property from his father in 1993.  He stated that it was no secret that the neighbor's garage corner was on their property because the family talked about it over the years.  He disclosed that as the property changed hands, his father always told the new owners that the garage corner was on his property and that he was permitting them to leave it there with no charge. The affidavit stated that this was told to many different neighbors who lived there before Eckman including the Hvisdaks, the Hubers, and the Blinskys.  He explained that this is what he meant in his letter to Eckman about his family's generosity. Ramunno then stated that after his father passed away in 1993, he continued the same tradition by telling Eckman, as his father told the other neighbors, that the garage corner was on his property, that it could stay there, but that she could not build anything else on his land without his permission.

¶{51} Eckman did not submit an affidavit claiming that she was not given permission by Ramunno. In fact, her submission of Ramunno's letter allows an inference to be drawn that he told her from the beginning that the garage corner was on his land and (since he only asked her to remove the sidewalk) that she could keep the garage there. Thus, for purposes of summary judgment, none of the time after 1993 counts toward the required twenty-one years of adverse use.

¶{52} There is a twenty-five year period between the 1968 expiration of the original permission given to Innocenzi (when he moved out) and the permission allegedly given to Eckman in 1993. As Hvisdak moved out in 1971, any permission given to him would not break the twenty-one year period prior to Ramunno's 1993 grant of permission. Thus, it is irrelevant that Eckman did not ensure that Hvisdak's affidavit mentioned express permission or the lack thereof.

¶{53} However, viewing the evidence in light most favorable to Ramunno and considering the fact that adverse possession is highly disfavored by the Supreme Court, a reasonable person could find that permission was granted by his father to the various occupier's within the twenty-one year period existing prior to the 1993 permission Ramunno himself granted to Eckman. That is, the year after Hvisdak moved out would begin the twenty-one year period. There is evidence that Ramunno's father gave express permission to two sets of neighbors, the Hubers and the Blinskys, who occupied the property between Hvisdak and Eckman, during the relevant twenty-one-year period. Thus, there exists a genuine issue of material fact as to whether the use was permissive as opposed to adverse for the proper twenty-one year period. As such, the grant of summary judgment to Eckman regarding her claim for quiet title to the garage based upon adverse possession is reversed.

¶{54} Contrary to Ramunno's other argument, however, he was not entitled to judgment as a matter of law regarding the garage either. As aforementioned, the affidavit of the original owner of the garage concerning original permission was not dispositive, nor was the failure of the second owner to mention permission dispositive as neither person's occupation of the land was within the relevant twenty-one year period. Eckman's failure to supply an affidavit regarding whether Ramunno gave her express permission to maintain her garage's position merely stopped the time from

running past 1993, a year after she purchased the property. Furthermore, as she could not deny grants of which she had no knowledge, she could not state in her affidavit that permission had not been given to her predecessors within the proper time period.

**¶{55}** Contrary to Eckman's suggestion at oral argument, the fact that there is a structure does not prohibit the landowner from defending against the adversity element with a claim of permission. See, e.g., *Hamons v. Caudill*, 6th Dist. No. H-07-020, 2008-Ohio-248, ¶15-16. Rather, the presence of the structure merely allows the occupier to meet their initial burden on adversity by establishing that the nature of the use is inconsistent with the landowner's rights. See id. See, also, *Bowlander v. Mapes*, 6th Dist. No. OT-08-033, 2009-Ohio-664, ¶15 ("In order to be deemed "adverse" for evidentiary purposes, the nature of the non-owner occupier's use of the property must be sufficient to clearly manifest an intention to claim title such that it gives notice to the owner of both the claim itself as well as the extent of the claim."), citing *Humphries v. Huffman* (1878), 33 Ohio St. 395, 402. The location of a corner of a structure such as this garage on the neighbor's land accomplishes this for purposes of defeating Ramunno's summary judgment motion. See id. As such, both parties established genuine issues of material fact for trial. In accordance, we reverse the grant of summary judgment to Eckman and remand the case for further proceedings.[2]

## OTHER ENCROACHMENTS

**¶{56}** Lastly, it is important to point out that where Eckman merely sought summary judgment regarding the garage corner, and specifically stated that she was not seeking summary judgment regarding the sidewalk, it was improper to grant Eckman the portion of her survey which included the encroaching portion of the sidewalk and the land surrounding it. This is especially true considering the uncontradicted evidence at the summary judgment stage that Eckman constructed the

---

[2]In doing so, we disregard Eckman's alternative suggestions in her appellee's brief (such as estoppel) as to why she should be granted the property as they were not raised in the summary judgment motion which was only concerned with whether there existed a genuine issue of material fact on the elements of adverse possession. As for Eckman's reference to a "claim of right," in Ohio, this is merely the opposite of permissive use as it is a type of adverse use (another being knowing trespass). See, e.g., *Kimball v. Anderson* (1932), 125 Ohio St. 241, 244.

sidewalk, she began occupying the property in 1992, and thus the sidewalk was in existence for less than twenty-years.

¶{57} On the subject of this uncontradicted evidence, Ramunno states that he was entitled to summary judgment regarding the sidewalk (and a certain landscaped area). However, the Supreme Court's position is forgiving to a party who fails to adequately factually respond to a motion for summary judgment if that party proves their case at trial, making the denial of summary judgment moot or harmless. See *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 156, 158. Here, the issue is factual, and there were not cross-motions for summary judgment on this issue. The Civ.R 54(B) language, which made the grant of summary judgment on the garage appealable at this time, does not change the fact that the denial of summary judgment on other matters is not appealable. See *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, ¶9; *State ex rel. Overmeyer v. Walinski* (1966), 8 Ohio St.2d 23. See, also, R.C. 2505.02. Thus, we refuse to consider Ramunno's request for summary judgment on these other encroachments at this point. See *Allen v. Johnson*, 9th Dist. No. 01CA46, 2002-Ohio-3404, ¶10-11, 13 (accepting appeal granting summary judgment but refusing to address, among other things, the denial of plaintiff's motion for summary judgment even where cross-motions existed). Cf. *Bush v. Roelke* (Sept. 19, 1990), 9th Dist. No. 90CA4800.

¶{58} For the foregoing reasons, the judgment of the trial court is hereby reversed and this case is remanded for further proceedings.

Waite, J., concurs.
Celebrezze, J., concurs.