[Cite as *Shrock v. Mullet*, 2019-Ohio-2707.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

LINDA SHROCK,

Plaintiff-Appellee,

v.

SAMUEL MULLET,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0018**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 16-CV-303

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Joseph A. Dubyak*, 700 West St. Clair Ave., Suite 400, Cleveland, Ohio 44113 for Plaintiff-Appellee and

*Atty. Lawrence T, Piergallini*, 131 Third Street, PO Box 7, Tiltonsville, Ohio 43963 for Defendant-Appellant.

Dated:  June 28, 2019

**Robb, J.**

{¶1} Defendant-Appellant Samuel Mullet appeals the decision of the Jefferson County Common Pleas Court entering judgment in favor of Plaintiff-Appellee Linda Shrock. Appellant raises eight assignments of error concerning his obligation to his daughter under a 1997 oral agreement wherein he sold 80 acres of land but a deed was not presented for his execution until after the complaint was filed. Appellant asks whether Appellee's contractual obligation to obtain a survey in order to present a deed to Appellant was a condition precedent to the contract or merely a condition for obtaining legal title (to support the equitable title that passed when consideration and possession were exchanged). He also contends Appellee failed to perform this condition within a reasonable time.

{¶2} If these arguments are successful, Appellant states the six-year statute of limitations for oral contracts would have started to run earlier (when a reasonable time to present a deed had passed). He also contests the trial court's captioning of its order as quieting title, noting the court's findings sounded in principles of contract and specific performance and claiming the possession element of quiet title was not met. Lastly, he claims he should not be liable for Appellee's entire claim for her share of the signing bonus paid under an oil and gas lease because the lease was also signed by his now-deceased wife, who was a joint and survivor owner of the property at the time.

{¶3} For the following reasons, we disagree with the dispositive arguments presented and find others moot. The trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶4} In 1997, Linda and Emanuel Shrock sold their home near Fredericktown, Ohio to move to Bergholz, Ohio. They purchased 16 acres on which they would construct a new home. This land was adjacent to land owned by Linda's parents, Samuel and Martha Mullet. Around the same time, the Mullets agreed to sell the Shrocks approximately 80 acres of their adjoining land. The Shrocks paid the $40,000 purchase price to the Mullets for the 80 acres in the spring of 1997. Because the 80 acres was carved from other parcels owned by the Mullets, the property had to be surveyed before a deed could be drafted. This was not performed, and in October 2011, the Mullets signed

an oil and gas lease for property titled in their name which included the 80 acres purchased by the Shrocks in 1997. The Mullets received a signing bonus of $5,025 per acre.

{¶5} On June 24, 2016, Linda Shrock filed a complaint against Samuel Mullet and the Estate of Martha Mullet. She alleged her parents breached the purchase agreement, sought specific performance of the obligation to execute a deed, asked for quiet title, and claimed rights to the signing bonus paid under the lease as compensatory damages or under the doctrine of unjust enrichment. Her former spouse, Emanuel Shrock, was also named as a defendant in case he asserted an interest in the property.

{¶6} Cross-motions for summary judgment were filed by Samuel Mullet and Linda Shrock, and depositions were submitted. Samuel Mullet's motion set forth various arguments including: his performance was excused because the Shrocks failed to satisfy the condition precedent of obtaining a survey and a deed; if a contract is silent on time for performance of a condition precedent, then a reasonable time is imposed; the condition precedent was not fulfilled within a reasonable time; the six-year statute of limitations should be started a reasonable time after the oral agreement, rather than in 2011 when the first act inconsistent with the contract occurred (as found in the court's prior order overruling a motion to dismiss); and quiet title was unavailable because Linda Shrock was not "in possession" of the 80 acres.

{¶7} Linda Shrock's motion sought summary judgment on her claim for quiet title or her claim for specific performance of the contract (leaving the unjust enrichment issue for trial). At the time of her deposition, Linda was unaware whose responsibility it was to obtain a survey and deed. (L. Shrock Depo. 18, 36). Emanuel Shrock testified at deposition: the verbal agreement to purchase 80 acres from the Mullets was made before they purchased the adjacent 16 acres; they paid the $40,000 purchase price to the Mullets in the spring of 1997 "and then later on we were to survey it if we wanted a deed"; and the Shrocks were responsible for bringing any survey to an attorney to have a deed prepared. (E. Shrock at 9, 12, 29). On the 80 acres, the Shrocks constructed a barn and a pole building, installed a fence, farmed the land, and leased the land to a farmer (who paid the Shrocks, not the Mullets). (E. Shrock Depo. 16-18, 31).

{¶8} The Shrocks were divorced on February 25, 2016. Emanuel received the house and its 16 acres upon his payment to Linda for her share of said property. The divorce decree did not address the 80 acres, which was not contained in the financial affidavits filed in the divorce action. (E. Shrock Depo. 7, 12). According to Emanuel, he released his claim to the 80 acres in 2015, when Samuel Mullet refunded Emanuel's half of the purchase price. (E. Shrock Depo. 12-14). Linda Shrock moved from the house on the 16 acres on April 15, 2016, and Emanuel did not notice her visiting the 80 acres in the year thereafter. (E. Shrock Depo. 24-25).

{¶9} At Samuel Mullet's deposition, he acknowledged selling approximately 80 acres to the Shrocks for $40,000 under a verbal agreement. (Mullet Depo. 10-11, 47). He confirmed the Shrocks farmed part of the land, used another part for horse pasture, installed a barbed wire fence, and constructed a barn and a machinery shed on the land (using the timber cut from the land). (Mullet Depo. 14-15, 30). Samuel testified the Shrocks agreed to survey the property so a deed could be prepared; he said they were asked to do so numerous times. (Mullet Depo. 24-25). He spoke of the oil and gas lease he signed which included the 80 acres. He said they subsequently gave Linda Shrock amounts totaling $30,000 but acknowledged they gave money to others who were convicted of charges unrelated to this appeal as well. (Mullet Depo. 28-29). He also said the money given to Linda was to finish an addition to her house and suggested this represented the return of her share of the purchase price (as they returned Emanuel's share to him). (Mullet Depo. 52, 62).

{¶10} Linda Shrock testified at deposition that the purchase money was not returned to her and suggested her mother gifted her family $13,000 to pay bills so her sons could continue a carpentry business while Emanuel was incarcerated on charges unrelated to this appeal and then paid for a new well for her children who remained in the house while she was incarcerated on the unrelated charges. (L. Shrock Depo. 19, 29-33). (The Shrocks have ten children, five of whom were minors at the time of the 2017 deposition). She explained how her mother would bill them for their portion of the real estate taxes each year, which Emanuel confirmed. (L. Shrock Depo. 41; E. Shrock Depo. 23). According to Samuel Mullet, the Shrocks stopped paying their share of the real

estate taxes after the federal criminal case was initiated (against himself, the Shrocks, and others). (Mullet Depo. 26-27).

{¶11} On July 14, 2017, the trial court denied Samuel Mullet's motion for summary judgment (but dismissed any fraud claim in the complaint, which Linda Shrock argued did not even set forth a claim for fraud). As to matters not at issue on appeal, the court found the divorce proceedings did not give the Mullets the right to assert res judicata or estoppel principles. The court also found the oral contract enforceable applying the statute of frauds exception for substantial performance of an oral contract for the sale of real estate. Next, in addressing Samuel Mullet's contention that the six-year statute of limitations for oral contracts would start a reasonable time after the contract was entered, the court pointed out a contract cause of action accrues on the date of the breach. The court found there was a breach of the contract in 2011, when the Mullets executed the lease over property they sold to the Shrocks, and the 2016 complaint was filed within six years.

{¶12} The trial court then stated a specific breach by the Mullets for failure to execute a deed may not have occurred yet as a condition precedent to this duty had not yet occurred, i.e., the Shrocks did not obtain a survey and present a deed to the Mullets. The court found this scenario (involving a condition for a promise to execute a deed) was distinct from a condition precedent to the formation of contract (and from the cases involving the failure to tender the consideration). The court found the Shrocks completely and timely performed the consideration required of them, stating: "The contract vested the Shrocks with equitable title and the right to possession and left the Mullets with bare legal title."

{¶13} The court found inapplicable the law that a condition precedent to a contract must be performed within a reasonable time (if the contract does not provide a due date). Still, the court decided a reasonable time standard should be applied to the Shrocks duty to obtain a survey and present a deed (since the contract did not provide a due date). The court reviewed various facts relating to whether the delay in obtaining a survey and presenting a deed to the Mullets would be considered unreasonable but ultimately concluded that issue was a factual one for trial. The court bifurcated that trial from the trial on economic issues.

**{¶14}** On August 8, 2017, the trial court filed an order opining that all issues necessary to determine Linda Shrock's motion for summary judgment were resolved in the July 14, 2017 order. The court added that it was not clear she presented Samuel Mullet with a recordable deed which was described as a "condition precedent" to his duty to execute a deed. The court concluded specific performance could not yet be ordered.

**{¶15}** On May 2, 2018, the court granted the Estate of Martha Mullet's motion for summary judgment on the specific performance claim. As conceded by Linda Shrock, Samuel Mullet was the only party who could execute a deed since he became the sole legal owner of the property upon Martha's death under the joint and survivorship deed. After finding any recovery of contractual money damages against the Estate was barred due to the failure to present a timely claim to the Estate as required by statute, the court allowed the case to proceed against the Estate on a constructive trust theory.

**{¶16}** On June 19, 2018, the court held a bench trial on whether the delay in obtaining a survey and providing a deed was unreasonable. First, the parties stipulated the estate should be dismissed, and the court dismissed the estate as a party before the trial testimony commenced. The deposition of Samuel Mullet was admitted as evidence in lieu of live testimony (as he was in federal prison), and the Shrocks testified at the trial.

**{¶17}** Linda Shrock testified they used money received from the sale of their house in another town to buy their 16 acres and to pay the Mullets $40,000 for the 80 acres. (Tr. 14, 26). After the May 1997 purchase of the property from her father, her husband told her he contacted a surveyor who continually failed to appear at the property. (Tr. 15, 22). She testified that while she was married and Amish, she would not have had authority to order the survey; after she was released from prison, she left the Amish community and received a divorce. (Tr. 31, 33). Just after her divorce and just before filing the complaint, she paid $600 for the preparation of a plat (which ended up just being a map). She thereafter paid $6,000 for a survey using funds received in the 2016 divorce settlement. (Tr. 16-18, 24, 26-28). Corresponding invoices and checks were admitted to confirm: $600 was paid in April 2016 in response to an invoice for services described as a plat and legal description; $2,000 was paid to a different company in August 2017 as a down payment for a survey; and the remaining $4,000 was paid in October 2017.

**{¶18}** On cross-examination, it was elicited that she participated in signing an oil and gas lease for the 16 acres in 2011, and they received a signing bonus of $80,000. (Tr. 24). She testified that she paid her mother the real estate taxes on the 80 acres until her incarceration in 2012. (Tr. 28-29). Her mother gave her $13,000 in April 2012 in order to help her family (her husband was already incarcerated, she was about to leave her children to start her prison sentence, and two of her children had started a carpentry business and had bills to pay). (Tr. 25-26, 28-30). She said this gift was unrelated to the 80 acres, noting her mother also provided money to other community members who were also sentenced to prison. (Tr. 30).

**{¶19}** Emanuel Shrock testified it was their obligation to get a survey and produce a deed. (Tr. 35). Although he disputed that a married Amish woman could not have hired a surveyor, he confirmed the first person he asked to perform a survey failed to follow through; the next person he called said it would "cost thousands of dollars and I didn't have the money to pay that." (Tr. 38, 42). Emanuel acknowledged Samuel Mullet returned $20,000 to him (from the Bergholz Amish Church fund) in the spring of 2015 (when Emanuel was released from prison) for his share of the original purchase price of the 80 acres "[b]ecause I agreed to let the land go back." (Tr. 40-41, 44-48).

**{¶20}** On July 17, 2018, the trial court issued its decision finding in favor of Linda Shrock on the reasonableness issue. The court recited its prior rulings, such as: the survey and deed preparation may have been conditions precedent to the execution of a deed but were not part of the consideration or conditions precedent to an enforceable real estate sale; and the contract vested the Shrocks with equitable title and the right to possession and left the Mullets with bare legal title. The court then found the delay in obtaining a survey and presenting a deed was reasonable under the circumstances of the case, making various factual findings. The court concluded Linda Shrock was the owner of an undivided one-half interest in the subject 80 acres and Samuel Mullet was the owner of the other half (due to Emanuel Shrock's release and re-conveyance of his half of the equitable title back to Samuel Mullet). The court ordered Samuel Mullet to sign the deed, prepared in accordance with the order, when it is presented to him.

**{¶21}** In the order, the court set a hearing on economic issues. Thereafter, the parties waived this hearing and filed a stipulation of facts, agreeing the total paid to the

Case No. 18 JE 0018

Mullets under the lease for the 80 acres was $398,693.55. On September 11, 2018, the trial court issued judgment for Linda Shrock in the amount of $199,346.77, half of the lease signing bonus for this acreage (corresponding to the court's judgment that she owned half of the property). Samuel Mullet (hereinafter Appellant) filed a timely notice of appeal.

<u>ASSIGNMENTS OF ERROR 1-3: CONDITION PRECEDENT OR COVENANT</u>

**{¶22}** Appellant sets forth eight assignments of error. The first three assignments of error, which Appellant improperly combines instead of arguing each separately,[1] contend as follows:

"The trial court erred in ordering specific performance of the contract by Appellant when Appellee failed to perform the conditions precedent for twenty (20) years and four (4) months after the date the contract was entered into."

"The trial court erred in finding that twenty (20) years and four (4) months was a reasonable time for Appellee to perform the conditions precedent."

"The trial court erred in ordering specific performance of the contract by Appellant, when at the time of the filing of the complaint, Appellee had no cause of action because she failed to perform the conditions precedent required of her."

**{¶23}** Appellant points out the parties do not dispute the existence or terms of the oral contract. There is no issue presented with regards to the trial court's holding that the contract was enforceable notwithstanding the statute of frauds. *See, e.g., Tier v. Singrey*, 154 Ohio St. 521, 526, 97 N.E.2d 20 (1951) (in an action for specific enforcement of an oral contract for the sale of land, equity intervenes to render the statute of frauds inoperative where there is part performance which considers possession and change of position to one's prejudice in reliance on the sale; *Bear v. Troyer*, 5th Dist. Guernsey No. 15 CA 17, 2016-Ohio-3363, ¶ 34 (consideration for the property was paid in 1990 after which the purchaser paid the real estate taxes and made improvements, and the other party never asserted an interest in the property until the purchaser requested the

---

[1] As Appellee points out, App.R. 12(A)(2) and App.R. 16(A)(7) require an appellant to argue each assignment of error separately and allow a court to disregard an assignment of error due to violation of this rule. Appellee also points out Appellant fails to distinguish the standards and arguments applicable to his contentions regarding the denial of summary judgment and those regarding the decision after trial.

execution of a deed in 2013). It is noted that in these types of cases, no deed was executed.

**{¶24}** The trial court found the obligation of the Shrocks to present a prepared deed to the Mullets after obtaining a survey may have been a "condition precedent" to the Mullets' duty to execute a deed, but it was not a condition precedent to the existence of a contract. As there was no time period expressed in the contract for obtaining the survey and deed, the court held a trial on whether a reasonable time had passed. Appellant complains the deed was not presented to him until October 2017, after the complaint was filed and after the trial court issued an order stating specific performance could not be ordered (at the summary judgment stage) as the survey and deed had not been prepared. Appellant urges a reasonable time for performance had long passed. Appellant also argues the deed preparation was a condition precedent to the contract itself.[2]

**{¶25}** Appellant emphasizes the law stating: a condition precedent is an uncertain event which must occur before performance under a contract becomes due (unless its non-occurrence is excused); a condition precedent must be performed before the contract is enforceable; and the nonoccurrence of the condition precedent discharges the duty to perform. *See, e.g., Little v. Real Living HER*, 10th Dist. No. 13AP-924, 2014-Ohio-5664, ¶ 12 (also discussing the effect of repudiation causing the other's performance of a condition precedent to be futile). Appellant notes a reasonable time is imposed if the contract does not specify a time for performance, and a party is excused from further contractual obligations if the other party unreasonably delays performing. *See, e.g., Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.,* 10th Dist. No. 06AP-851, 2007-Ohio-2788, ¶ 16*; Park v. Acierno*, 160 Ohio App.3d 117, 2005-Ohio-1332, 826 N.E.2d 324, ¶ 45 (7th Dist.) ("if the agreement does not contain a date as to when payment is to be made or performance is to be rendered, a reasonable time can be imposed"). He also focuses on the extension of the reasonable time test to conditions precedent to contract formation. *See Biggs v. Bernard*, 98 Ohio App. 451, 130 N.E.2d 152 (6th Dist.1954), syllabus, citing *J.A. Wigmore Co. v. Chapman*, 113 Ohio St. 682, 150 N.E. 752 (1925).

---

[2] Appellant does not argue a condition subsequent failed to occur which gave rise to a right to repurchase, and there was no contention the contract expressly contained this right. *See M.V.P. Ltd., L.L.C. v. Matt*, 167 Ohio App.3d 396, 2006-Ohio-1634, 855 N.E.2d 507, ¶ 26 (6th Dist.) (a condition subsequent is not favored either in law or in equity and is strictly construed to save the grant and not to defeat it).

**{¶26}** Appellant cites a Supreme Court case where 22 years for the seller to pay an amount to obtain reconveyance of the property was not reasonable. *Hill v. Irons*, 160 Ohio St. 21, 113 N.E.2d 243 (1953). Appellant notes the holding: "It is not consistent with general principles of law that the defendants should forever be under obligation to reconvey the property to the plaintiff." *Id.* at 30. In *Hill*, the plaintiff conveyed the property by deed under a contract with the defendant (a surety and relative) calling for reconveyance if the plaintiff paid her outstanding debts on the property. At the time of the contract, the note to the bank was due in 90 days. The plaintiff never paid the debt. Subsequent renewals were issued by the bank with the defendant as the sole obligor. The defendant eventually finished paying off the debt, at which point the plaintiff filed suit, more than 22 years after the contract calling for the plaintiff's payment. The Court observed that if a reasonable time was read into the contract, then the plaintiff waited an unreasonable time to seek to pay the debts on the property, which had long been paid by the defendant. *Id.* (if a contract is not invalid for lack of the time element, then the contract would run only for a reasonable time), citing *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 127, 48 N.E. 502 (1897) ("When no time is fixed for the performance of a contract, a reasonable time is implied.").

**{¶27}** Appellant believes an Eleventh District case is persuasive on the issue of whether the Shrocks performed within a reasonable time. In *Winning*, the purchaser failed to pay the purchase price ("a sum sufficient to pay in full the current mortgage to America's Home Lender * * * and the judgment lien in favor of Capital One") at the time of the 2006 purchase agreement. In 2007, the seller refused to execute a deed because the purchase price had not been paid, and the purchasers filed suit. The evidence at the 2010 trial showed they still could not pay the purchase price. The Eleventh District concluded the purchasers could not obtain specific performance because they did not show performance of their part of the contract or alternatively, if the seller repudiated, they did not show their readiness and ability to pay. *Winning v. Winning*, 11th Dist. Trumbull No. 2010-T-0124, 2012-Ohio-1448, ¶ 27, 29, citing *The George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54, 84 N.E. 595 (1908), paragraph two of the syllabus. The court also held the purchasers were not entitled to recover on their contract claim because they failed to perform under the contract within a reasonable time. *Winning*

at ¶ 30, 35-37 (also noting the delivery of the deed is due simultaneous with payment unless the contract provides otherwise).

**{¶28}** As to Appellant's argument that, as a matter of law, Appellee had no cause of action when she filed her complaint or at the summary judgment stage because she still had not performed, this ignores a holding in the very case relied on by Appellant: if the seller repudiates the purchase agreement, then the buyer need not show performance but can instead show she was ready and willing to perform. *Winning* at ¶ 27, 29. The failure to obtain a survey and deed were not bars to filing a complaint or proceeding to trial, and there was no error in denying summary judgment and proceeding to a bench trial on the factual issues. Samuel Mullet testified at his deposition that he would not sign a deed. In addition, it was disclosed at deposition that he and Emanuel Shrock entered an agreement whereby Emanuel released his claim and returned the equitable title to his half of the subject property to Samuel Mullet. This would have made deed preparation uncertain as one of the grantees was claiming he sold his half back to the grantor.

**{¶29}** Furthermore, as the trial court opined, the execution of the 2011 oil and gas lease by the Mullets and their retention of the signing bonus corresponding to the 80 acres at issue constituted repudiation of the 1997 sale "and from that point forward it would have been a futile and vain act for Plaintiff to incur the expense of a survey and legal description to complete a contract that was already repudiated by Defendant." Considering the high cost of the survey, the Mullets' retention of the signing bonus over land sold to the Shrocks made a survey and deed preparation futile at that point. As Appellant points out, the Shrocks came into some money at this same point due to a lease they signed for the 16 acres titled in the Shrocks' name. This merely indicates they were able to perform at the time the contract had been repudiated. The issue essentially became whether the Mullets were still bound by the contract in 2011.

**{¶30}** Appellee points out that where a contract is substantially completed, the drastic remedy of rescission and forfeiture is generally refused by courts. *See City of Cleveland v. Herron*, 102 Ohio St. 218, 224, 131 N.E. 489 (1921) (the mere failure of consideration due to the lack of future performance under the real estate contract is not sufficient in equity to warrant the rescission of an executed contract). Appellee states the equitable title already passed, all that remained was the conveyance of legal title (for the

protection of the Shrocks who were to obtain a survey if a deed was desired). *See Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24, 484 N.E.2d 186 (1st Dist.1984) (if the parties enter an enforceable agreement for the sale of land, which is not a land installment contract, and legal title has yet to pass, the purchaser is regarded in equity as the owner and legal title is held in trust for him).

**{¶31}** An equitable owner is recognized in equity as the owner of the property since "the real and beneficial use and title belong to him, although the bare legal title is invested in another." *Levin v. Carney*, 161 Ohio St. 513, 518, 120 N.E.2d 92, 96 (1954). An equitable owner has present title in land which will ripen into legal ownership upon later performance; therefore, there may be two owners, the nominal or legal owner and the beneficial or equitable owner. *Wood v. Donohue*, 136 Ohio App.3d 336, 340, 736 N.E.2d 556 (1st Dist.1999). Accordingly, where the equitable owner claims he now has the right to legal title as well, a suit can be brought if the nominal owner has repudiated the sale. In an attempt to avoid contract formation, Appellant attempts to argue the obtaining of legal title was a condition precedent to the sale of the land.

**{¶32}** A condition precedent to an enforceable contract must be performed before the contract is effective. *Mumaw v. Western & Southern Life Ins. Co.*, 97 Ohio St. 1, 11, 119 N.E. 132 (1917). A condition precedent is not favored by the law, and courts avoid construing provisions to be such unless the intent of the agreement plainly shows the contract is not effective unless the condition occurred. *Coldwell v. Moore*, 2017-Ohio-526, 85 N.E.3d 262, ¶ 31 (7th Dist.). *See also Grigoryan v. MaxOut Sports, L.L.C.*, 2017-Ohio-6982, 94 N.E.3d 1214, ¶ 28 (8th Dist.). The determination of whether a condition in a contract is a true condition precedent or merely a promise to perform presents the question of the intent of the parties. *Adkins v. Bratcher*, 4th Dist. Washington No. 07CA55, 2009-Ohio-42, ¶ 31-32 (finding the seller's obligation to obtain a release of the real estate from his mortgage was not a condition precedent to his performance and instead was his obligation under the purchase agreement).

**{¶33}** As Appellant points out, if a contract does not contain a time for payment of the purchase price and the purchaser does not pay the purchase price within a reasonable time, the contract fails. However, in this case, the consideration for the sale of the 80

acres was paid in full within a period of time conceded to be reasonable, possession was delivered and maintained, equitable title passed, and the contract was enforceable.

**{¶34}** This court concludes the deed preparation term (and the allocation of the responsibility for paying for a survey in order to prepare the deed) did not constitute a condition precedent to the *formation* of the contract under the circumstances of this case. If the Mullets were unsatisfied with the lack of a survey and deed, they could have sought performance of the covenant in an action; instead, they continued to apportion and collect real estate taxes and proceeded through the years as if the Shrocks were the property owners, which could have been construed as acquiescence as the years approached 2011.

**{¶35}** The "condition" for the passing of formal legal title was a *covenant* in the contract. This covenant does not mean the contract for the sale of realty was rescinded, the property was forfeited, or the contract ceased to exist due to the buyer's subsequent failure to present a deed to the seller. There was no indication the contract plainly contained such a term. *See Coldwell* at ¶ 31; *Grigoryan* at ¶ 28; *Adkins* at ¶ 31-32. As a condition precedent is not favored by the courts and doubtful language is construed as imposing a duty under the contract via a covenant rather than as creating a condition precedent, the trial court did not err in finding the preparation of a deed to the sellers was not a condition precedent to the sale contract.

**{¶36}** Appellant then turns to the next question answered by the trial court: whether the buyers' delay in obtaining a survey and deed was unreasonable. Although the trial court distinguished between a condition precedent involving consideration for the sale (which is subject to a reasonable time test) and a covenant to be performed later before another obligation arises, the court also applied the reasonable time test to the latter type of "condition" (while essentially finding it was a covenant in the contract).

**{¶37}** However, if the term is not a condition precedent to the sale and its non-occurrence would not unwind the contract, then one could conclude the buyers would not lose their right to a deed by the mere passing of an "unreasonable" time.[3] The time

---

[3] Related to this alternative reason to affirm the trial court's judgment, Appellant mentions that Appellee did not file a cross-appeal. However, "A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error." App.R. 3(C)(2).

Case No. 18 JE 0018

passed would be more relevant to an allegation of the buyer's breach than to the buyer's ability to receive legal title after repudiation occurred. That is, a reasonable time test may have been applicable if the seller had sued the buyers to force them to present the deed they promised to have prepared. Unreasonable delay would be what *the sellers* would argue if they filed a lawsuit seeking specific performance of the contract term (or seeking damages if they obtained the survey and deed themselves even though it was the contractual duty of the buyer). Specific performance, as a principle of equity, is controlled by considerations of justice and fair dealing, which overlap with the findings found relevant to the delay in seeking a survey to prepare a deed. *See Naughton v. Morford-Wood Co.*, 90 Ohio St. 61, 66, 106 N.E. 659 (1914). *See also Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984) (specific performance of a contract to convey real estate rests in the sound discretion of the court controlled by principles of equity on full consideration of the particular circumstances of the case).

**{¶38}** Unreasonable delay is also a feature of a laches defense, which is not specified in this case, but may have been applied due to the use of the reasonable time test. *See State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995) (laches involves unreasonable delay or lapse of time in asserting a right, absence of an excuse for the delay, actual or constructive knowledge of the wrong, and prejudice to the other party.) Whether the delay was unreasonable could also be pertinent to issues such as credibility, especially if the seller does not admit the oral contract and its terms.

**{¶39}** The trial court reasonably concluded the Shrocks' delay was not so unreasonable as to defeat the present claim. Appellant agrees the Shrocks were not required to immediately obtain a survey, stating they had a reasonable time to do so. Appellant urges that if the much shorter time period in *Winning* and *Hill* (which were fully reviewed above) was not reasonable, then the time period in this case was not reasonable. As the trial court observed, the question of what time lapse was reasonable for providing the consideration for the sale of real estate (such as in *Winning* where the purchase price was not paid) can be different than what is a reasonable time for *a buyer* to prepare a deed after a sale is completed (by payment of the purchase price and delivery of possession of the land) where a survey is required. Similarly, this case is distinct from

the 22 years that passed in *Hill* before the seller sought reconveyance of her property, even though she never paid the debt the contract required her to pay in order to obtain reconveyance (and a bank note was due 90 days after the contract). *See Hill*, 160 Ohio St. 21. Again, the purchase price was timely paid here, and this case did not involve a condition precedent to contract formation.

**{¶40}** Furthermore, assuming a reasonable time test was applicable to the situation at bar, what is a reasonable time is subject to an evaluation of the totality of the circumstances and is typically a factual question for trial. *See Cionni v. Reid*, 7th Dist. No. 90-J-19 (July 25, 1991). "By reasonable time is meant a time which is reasonable under all the circumstances, ordinary and extraordinary. Reasonable time is not measured by hours, days, weeks, months, or years, but is determined from the surrounding conditions and circumstances which the parties had in contemplation in executing a contract." *Id.*

**{¶41}** In ruling on summary judgment, courts are required to construe the evidence in the light most favorable to non-movant. Civ.R. 56(C). Furthermore, "Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 642 N.E.2d 615 (1994), syllabus. After a trial, only legal issues from the summary judgment stage (that are not cured by new facts at trial) survive for appellate review. *Premier Therapy, LLC v. Childs*, 7th Dist. Columbiana No. 14 CO 0048, 2016-Ohio-7934, 75 N.E.3d 692, fn. 2("An error in denying of summary judgment is moot and not reviewable after a trial on merits where the final judgment is not contrary to the manifest weight of the evidence, at least to the extent the motion involved whether there were disputed facts"); *Ahern v. Ameritech Corp.*, 137 Ohio App.3d 754, 768-69, 739 N.E.2d 1184 (8th Dist.2000) ("Only when the denial of a summary judgment motion is predicated on a pure issue of law will the decision not be considered harmless and be reviewed by an appellate court").

**{¶42}** Therefore, the denial of summary judgment on the factual issues discussed by the parties on the reasonableness of the delay in obtaining a survey and preparing a

deed is not appealable after the trial held thereon. *See, e.g., id.*; *Fediaczko v. Mahoning Cty. Children Servs.*, 7th Dist. Mahoning No. 11 MA 186, 2012-Ohio-6090, ¶ 106 ("after summary judgment is denied, further evidence can be generated at trial to fix any deficiencies from the summary judgment stage"), citing *Eckman v. Rammuno*, 7th Dist. Mahoning No. 09MA162, 2010-Ohio-4316, ¶ 57 (the Supreme Court's position is forgiving to a party who fails to adequately factually respond to a motion for summary judgment if that party proves their case at trial). The appellate review on Appellant's argument on the unreasonableness of the delay therefore proceeds on the trial evidence with the trial court as the fact-finder.

**{¶43}** Judgments supported by competent, credible evidence going to the material elements of the case will not be disturbed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue over the other; it relates to persuasion and the effect of the evidence in inducing belief. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, 19 (applying *Thompkins* to civil cases), citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In conducting a manifest weight of the evidence review, the reviewing court weighs the evidence and all reasonable inferences to be drawn therefrom, considers the credibility of witnesses, and determines whether in resolving evidentiary conflicts, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *See Thompkins* at 387.

**{¶44}** "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3 (if the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the judgment). The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co.* at 80.

**{¶45}** Appellant emphasizes that Linda Shrock moved in April 2016. However, she moved from the marital residence located on the Shrocks' 16 acres due to Emanuel

Case No. 18 JE 0018

receiving that property in the divorce; this is not dispositive as to the 80 acres. Appellant notes the affidavits filed in the Shrocks' divorce did not list the 80 acres. Prior to the divorce, Emanuel had agreed to release his claim, and legal title to the property was still in the Mullets' name. Appellant also points to the fact that the Shrocks discontinued paying real estate taxes in 2012 (after paying them annually since 1997 to Martha Mullet). Linda Shrock said she did not pay the taxes that year due to the pending federal criminal case, she was unsure if her son paid the taxes while she was in prison, and her mother provided money to assist her family and other people sentenced to prison in the federal case. Appellant points to money received by Linda Shrock in 2012 before she went to federal prison and in her 2016 divorce to show she could have afforded the survey earlier.

**{¶46}** Yet, these post-lease events are not necessarily dispositive to the issue of delay since it was reasonable to conclude that: the purchase agreement was repudiated when the Mullets executed the 2011 lease and thereafter retained the signing bonus for the property previously sold to the Shrocks; any performance after this would have been futile due to the Mullets' repudiation; and there was no breach by the Mullets until execution of the lease and retention of the signing bonus. Prior to this, Appellee points out there was a close family relationship and there was no reason to believe a formal conveyance was necessary. She claims the Mullets received the full benefit of the bargain in 1997, they delivered possession, and the delay did not impair their rights. From the time of the contract until the lease was executed, the real estate taxes were paid by the Shrocks to Martha Mullet. Also, a large barn was constructed, a pole building for machinery was constructed, a wire fence was installed, and trees from the property were used to construct the buildings. In any event, there is no dispute an oral contract was entered, the purchase price was paid, and possession was delivered.

**{¶47}** The trial court found the failure to obtain a survey and prepare a deed for the Mullets' signature prior to the 2011 lease was reasonable under the circumstances of the case, which included: the Shrocks timely paid the agreed upon consideration for the acres in 1997; they took possession of the property; they added substantial improvements (and if the purchase were unwound, Samuel Mullet would owe unjust enrichment for the value of the improvements); the Shrocks paid their share of the real estate taxes to the Mullets; the parties are family; the subject property was carved out of the parents'

property; there was no reason to believe the parents would retreat from the sale after having been paid in full; the delay cost the Mullets little if anything; Samuel Mullet and the Shrocks went to federal prison for participating in a criminal enterprise of Samuel Mullet; and Samuel Mullet offered no explanation as to how the delay prejudiced him.

{¶48} As to the latter observation, Appellant now states the marketability of his title would have been affected by the Shrocks' failure to obtain a survey and deed. Appellee responds that the marketability of Appellant's title to the subject property was irrelevant because he sold it to the Shrocks. Regarding the Mullets' land remaining after the sale, no evidence was presented that they lost a sale opportunity for the land from which the subject property was carved (their land minus the Shrock portion) or that the lease could not have been limited to certain acreage (or the corresponding bonus payment could have been passed along to the Shrocks). (These items also would have been relevant in the case of an action for breach of contract filed by the sellers against the buyers, which could have been instituted by the Mullets.)

{¶49} As Appellee points out, the record contains no indication of prejudice to the Mullets prior to 2011, when the lease was signed. This is despite the fact that the court's denial of summary judgment on this issue observed: the burden on Appellant from following the contract appeared de minimis compared to the burden on Appellee upon elimination of the contract; the Shrocks were at risk that the Mullets or their creditors might impair title, but this was not a risk of the Mullets; and the relative burdens on the parties would be a factor in the court's decision on what was a reasonable time which would be developed at trial.

{¶50} Under the circumstances of this particular case, it is concluded the trial court rationally found the failure to obtain a survey and prepare a deed prior to 2011 was not a delay so unreasonable that the sale should be unwound. In any event, there was no contractual term calling for rescission for a failure to perform after the contract became enforceable. The first three assignments of error are overruled.

ASSIGNMENTS OF ERROR 4-6: QUIET TITLE

{¶51} Appellant sets forth another grouping of three assignments of error, which he addresses all together. Assignments four through six contend as follows:

"The trial court erred by failing to state the legal basis for its order of July 17, 2018, in that it failed to explain and/or specify whether the decision was based on quiet title principles or contract/specific performance principles."

"The trial court erred in issuing the Order Quieting Title of July 17, 2018, without discussing or applying the requirements of Ohio Revised Code §5303.01."

"The trial court erred in issuing the Order Quieting Title of July 17, 2018, when the trial court's discussion of the case, legal analysis and order, sound of contract law, specific performance and reasonableness of time to perform a condition precedent."

**{¶52}** The court's July 14, 2017 decision on the summary judgment motions made various legal holdings in favor of Appellee but declined to enter summary judgment in her favor after finding a genuine issue on what would constitute a reasonable time to obtain a survey and deed. The court also concluded that, although the signing of the lease may have been a breach by the Mullets, the failure to transfer legal title may not be a breach calling for specific performance as a deed had not been prepared or presented yet. The court reiterated this in the May 2, 2018 order explaining the arguments in the Appellee's motion for summary judgment were addressed by the July 14, 2017 decision.[4] The court declared the trial would proceed on Appellee's "Quiet Title action and claim for specific performance" (which would be bifurcated from the economic issues). (J.E. 7/14/17).

**{¶53}** After the court held the bench trial, the court issued its July 17, 2018 judgment, which is the subject of these three assignments of error. The court reviewed various holdings it previously made in ruling on the summary judgment motions and incorporated by reference its orders of July 14, 2017 and May 2, 2018. The court then reviewed facts it found relevant and concluded the delay in obtaining a survey and preparing a deed was not unreasonable under the circumstances. The court ordered Appellee to provide a deed (conveying an undivided one-half interest in the 80 acres) to Appellant within 14 days of the order and ordered Appellant to execute and deliver the deed to Appellee within 30 days after receiving it; the court also provided instructions in case Appellant had objections to the form of the deed. (J.E. 7/17/18).

---

[4] We note the court did not grant Appellant's motion for summary judgment when it denied Appellee's motion seeking summary judgment on both her quiet title and specific performance claims. And, the denial of summary judgment was interlocutory and subject to change. *See Hull v. Astro Shapes, Inc.*, 7th Dist. No. 10 MA 26, 2011-Ohio-1656, ¶ 25 ("A court is not bound by its prior decision denying summary judgment. To the contrary, a court may reconsider it either by motion of one of the parties or sua sponte").

Case No. 18 JE 0018

**{¶54}** The court titled its July 17, 2018 judgment an "Order Quieting Title But Not Addressing Economic Issues." Appellant complains this heading suggests the order was quieting title even though the body of the order did not mention the quiet title statute or its elements and instead demonstrates the court's ruling was based on contract and specific performance principles. Appellant wonders if "the trial court was confused about the difference between a quiet title claim and a contract claim."

**{¶55}** Quiet title is a purely statutory cause of action in Ohio. *Ochsenbine v. Cadiz*, 166 Ohio App.3d 719, 2005-Ohio-6781, 853 N.E.2d 314, ¶ 11 (7th Dist.), citing *Holstein v. Crescent Communities, Inc.*, 10th Dist. No. 02AP-1241, 2003-Ohio-4760, ¶ 26. The quiet title cause of action is defined as follows:

> An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest. Such action may be brought also by a person out of possession, having, or claiming to have, an interest in remainder or reversion in real property, against any person who claims to have an interest therein, adverse to him, for the purpose of determining the interests of the parties therein.

R.C. 5303.01

**{¶56}** Appellant states the elements of a quiet title action were not established. Both parties agree the second sentence, allowing a person out of possession to file a quiet title action if he claims to have an interest in remainder or reversion, is inapplicable to this case. Appellee claims the first sentence applies because she was in possession of the subject property (or had constructive possession if neither party had actual possession). In arguing Appellee could not fulfill the possession element of the first sentence of R.C. 5303.01, Appellant relies on the fact that Appellee moved out of the marital residence in April 2016 and the complaint was filed in June 2016. Under Appellant's theory, a person would lose possession of acreage by selling and moving out of their house on neighboring land. As Appellee points out, the marital residence was located on the 16 acres (which was titled in the Shrocks name when they purchased it from a different seller) and was not located on the 80 acres at issue in this case. Appellee states she maintained possession but cites no testimony on this topic except that she

undisputedly had possession before the divorce and cannot be said to have left merely because she left the marital residence on other land.

**{¶57}** Although Appellee believes quiet title would have been available, she concludes possession is immaterial because the court did not issue a quiet title judgment. Appellee urges: the mislabeling of the July 17, 2018 order for quiet title is irrelevant; Appellant acknowledges the content of the order shows the court obviously applied specific performance principles; and the decision to grant specific performance and order Appellant to sign a deed rendered the quiet title claim moot.

**{¶58}** As to the particular argument that the court failed to refer to the quiet title statute or mention the element of the possession, Appellee states Appellant waived this argument because he failed to file a request for findings of fact and conclusions of law under Civ.R. 52. *See McCarthy v. Lippitt*, 7th Dist. Monroe No. 04-MO-1, 2004-Ohio-5367, ¶ 54 (appellant waived an alleged error with the failure to explain the decision where no request for findings and conclusions was made). *See also Fultz v. Fultz*, 4th Dist. No. Pickway 13CA9, 2014-Ohio-3344, ¶ 50-51 (it is presumed the trial court used the proper legal standard when evaluating the evidence). Pursuant to Civ.R. 52: "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise [a timely manner] in which case, the court shall state in writing the findings of fact found separately from the conclusions of law." The rule also provides: "An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule * * *." Civ.R. 52. Appellant concludes: the court's July 17, 2018 order was not a general judgment; it essentially contained findings of fact and conclusions of law; it specifically incorporated the prior orders; and a request would have been moot.

**{¶59}** Notably, a trial court's obligation under Civ.R. 52 is only after a bench trial, not after a ruling on a summary judgment motion, and the court's prior orders involved the summary judgment motions. Also, it is for the courts to determine whether findings and conclusions should have been provided upon a timely request or whether the trial court already issued an order which substantially complied with its obligation. *See generally State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928

N.E.2d 706, ¶ 38 (a trial court may substantially comply with Civ.R. 52 where the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to decide the issues presented). It is not for a party to assume the trial court would have refused to add any new information, and then file an appeal raising an issue with the failure to make findings on an alternative claim.

{¶60} Regardless, as Appellee points out, the court made no findings on quiet title because the judgment did not actually order quiet title under the statute. "[R]eal estate is almost always unique, and specific performance of a written contract for its sale is a common remedy for a breach of that contract." *Holstein*, 10th Dist. No. 02AP-1241 at ¶ 16 (while finding no evidence of possession for the quiet title portion of action). As acknowledged by Appellant, the court's July 17, 2018 judgment sounded in contract and specific performance principles.

{¶61} The court's order did not contain or incorporate a description of the property or incorporate the survey Appellee obtained. *See* R.C. 5303.01 ("The clerk of the court shall cause to be recorded in the deed records of each county in which any part of the real property lies, a certified copy of the judgment or decree determining the interests of the parties."). *See also Evanich v. Bridge*, 9th Dist. Lorain No. 04CA008566, 2005-Ohio-2140, ¶ 16 (quiet title judgment must adequately describe the property or incorporate a survey map); *Sturgill v. Warman*, 12th Dist. No. 118 (June 8, 1983) (judgment entry quieting title to provide the legal description of the property). Rather, the court ordered the deed to be presented by Appellee and signed by Appellant pursuant to contract obligations.

{¶62} In instructing Appellee to provide a deed (conveying an undivided one-half interest in the 80 acres) to Appellant within 14 days of the order, the court ordered Appellee to include in the deed a reference to this case by style and case number. *Compare* R.C. 5303.01 (where the clerk causes the court's judgment to be recorded). *See also* 10 Ohio Jur. Pl. & Pr. Forms, Judgment order quieting title, Section 116:29 (2018 ed.). Specifically, the court ordered Appellant to execute and deliver the deed to Appellee within 30 days after receiving it (and provided instructions in case Appellant objected to the form of the deed presented for his signature). For a quiet title judgment, Appellant's execution of the deed would have been unnecessary. *See* 5303.01.

{¶63} In conclusion, the trial court's July 17, 2018 judgment ordered specific performance of the real estate contract (with an adjustment in Appellant's favor due to Emanuel's insistence that he sold his half back to Appellant). Notwithstanding the caption of the judgment, the contents demonstrate the court did not issue a quiet title judgment. The misstatement in the title of the order had no effect on Appellant, and he does not indicate prejudice resulted from the label (where the first three assignments of error are overruled). Consequently, Appellant's fourth through sixth assignments of error are without merit.

ASSIGNMENT OF ERROR SEVEN: STATUTE OF LIMITATIONS

{¶64} Appellant's seventh assignment of error alleges:

"The trial court erred in holding that the 6 year statute of limitations on an oral contract began to run when Appellant executed the oil and gas lease on October 11, 201[1]."

{¶65} In ruling on the summary judgment motions, the court found the statute of limitations for an oral contract began when the breach occurred, which was when the Mullets signed the 2011 oil and gas lease and thereby encumbered the land they previously sold to the Shrocks and thereafter retained the portion of the signing bonus corresponding to that land. As the complaint was filed in 2016, the court found the six-year statute of limitations for oral contracts had not expired. The court noted Samuel Mullet did not breach earlier by his failure to sign a deed as the deed had not been presented to him by the Shrocks. (J.E. 7/14/17). The court said the signing of the lease was the first act inconsistent with the contract. (J.E. 7/17/18).

{¶66} The statute of limitations for oral contracts provides: "an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." R.C. 2305.07. In addition to breach of an oral contract, this statute of limitations also applies to a quasi-contract claim for unjust enrichment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 182, 465 N.E.2d 1298 (1984).

{¶67} Generally, a cause of action on an oral contract subject to R.C. 2305.07 accrues when the breach of the oral contract occurs. *See Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573, ¶ 49-52. *See also*

*Schmitz v. Natl. Collegiate Athletic Assn.*, 2016-Ohio-8041, 67 N.E.3d 852, ¶ 17 (8th Dist.) (the six-year statute of limitations in R.C. 2305.07 starts upon the alleged breach). A quasi-contract cause of action alleging unjust enrichment accrues on the date money is retained under circumstances where it would be unjust to do so. *Bank of Am., N.A. v. Darkadakis*, 2016-Ohio-7694, 76 N.E.3d 577, ¶ 43 (7th Dist.). Either way, the complaint was filed in 2016 and the accrual under these principles was no earlier than the October 2011 lease signing.

**{¶68}** Appellee concurs in the trial court's ruling that there was no breach of the oral contract by the Mullets before the 2011 lease signing and subsequent bonus retention. Notably, the court also found these acts constituted repudiation so as to make a future survey futile, and Appellant does not take issue with the holding on repudiation. Appellant states the six-year statute of limitations should begin to run after a reasonable time passed for Appellee to perform the obligation to obtain a survey and deed. In other words, he states once the buyer's delay in getting a survey and presenting the deed was unreasonable, the statute of limitations would start (on the running of all claims including the one seeking a deed). As Appellee points out, Appellant fails to cite any law supporting this position.

**{¶69}** In any event, Appellant concedes his statute of limitations theory would fail if this court disagrees with the argument set forth under his first three assignments of error. As we upheld the trial court decision finding the delay in obtaining a survey was not unreasonable, Appellant agrees his argument under this assignment of error fails.

ASSIGNMENT OF ERROR EIGHT: ECONOMIC ISSUES

**{¶70}** Appellant's final assignment of error provides:

"The trial court erred in granting a judgment in favor of Appellee and against Appellant for one-half of the oil and gas bonus payment ($199,346.77 that was paid to Appellant and his wife, Martha Mullet in 2012)."

**{¶71}** Before addressing Appellant's argument, we review the proceedings pertaining to the Estate of Martha Mullet. The Mullets jointly owned the real estate at the time of the contract with the Shrocks, at the time the 2011 lease was signed and the bonus payment received, and at the time of Martha's death in 2014, when the real estate

passed to Samuel due to the joint and survivorship deed. Appellee filed this lawsuit in 2016. The Estate filed a motion for summary judgment.

**{¶72}** As for the claim seeking to compel the conveyance of legal title to the property, the Estate motion's pointed out that Samuel Mullet became the sole legal owner of the property upon the 2014 death of Martha as the deed was held joint and survivor. Regarding the claim for money damages for breach of contract, the Estate asserted Appellee never presented a claim to the Estate as required by R.C. 2117.06 (six months from the date of death) or by R.C 2117.37 if the claim was a contingent claim (the later of six months from the date of death or two months after the cause of action accrued, which the Estate said would have been triggered by the 2011 lease and thus the date of death remained as the date to start the six months). *See* R.C. 2117.06(C) ("shall be forever barred as to all parties, including, but not limited to, devisees, legatees, and distributees"); R.C. 2117.37 ("or be forever barred from maintaining an action on the claim").

**{¶73}** Appellee's response to the summary judgment motion agreed the Estate was not a proper party for her specific performance claim. As to the Estate's argument on the failure to present a claim for contractual damages to the Estate, Appellee responded that her claim was contingent upon the conveyance of legal title (which was dependent on how the court ruled), giving her two months after the actual conveyance to present her claim to the Estate. She alternatively argued a plaintiff who is the equitable owner of land seeking an equitable remedy, such as a constructive trust over assets wrongfully held by an estate in order to avoid unjust enrichment, is not required to present a claim to the estate. (She also stated the Estate's arguments would not affect Samuel Mullet's joint and several liability for his contractual obligation.) The Estate's reply disclosed there was no money in the Estate upon which to impose a constructive trust.

**{¶74}** On May 2, 2018, the trial court granted the Estate's motion for summary judgment on the specific performance claim as Samuel Mullet was conceded to be the only party who could execute a deed. The court also found the claim for contractual damages against the Estate was barred due to the failure to present a claim to the Estate, finding the claim was not considered contingent merely because the court had not yet ruled in a lawsuit the claimant filed. However, the court allowed the case to proceed against the estate under the constructive trust theory.

{¶75} At the beginning of the June 19, 2018 bench trial, the parties stipulated the Estate of Martha Mullet should be dismissed, and the court dismissed the Estate as a party before the testimony commenced. The court noted they had a conference that morning where the parties agreed on certain facts regarding the assets of Martha Mullet: "the real estate transferred to Mr. Mullet on her death * * * the money was in a joint account with survivorship. So, it went too." Appellant's attorney verbally agreed with this. The court observed, "So there's nothing to impose a constructive trust on her about." The attorneys for both Appellant and Appellee agreed. The court dismissed the Estate, and counsel for the Estate left the courtroom. (Tr. 4). The court memorialized the stipulation as to the dismissal of the Estate in the July 17, 2018 judgment entry. (J.E. 7/17/18 at 1,2,6).

{¶76} In this entry, the court ordered Samuel Mullet to execute the deed presented by Appellee in accordance with the court's order, and the court set a hearing on economic issues. Rather than appear for the hearing, the parties filed a stipulation of facts and a waiver of the hearing. This stipulation stated the Mullets signed the lease on October 11, 2011 and the total sum paid to the Mullets for the acreage previously sold to the Shrocks was $398.693.55. (Stip. 8/21/18).

{¶77} The court's final judgment entry of September 11, 2018 found Appellee Linda Shrock was entitled to one-half of this amount ($199,346.77) due to the court's July 17, 2018 judgment ordering Appellant Samuel Mullet to sign a deed conveying to Appellee one-half of the subject property (with Samuel Mullet owning the other one-half since Emanuel Shrock admitted he sold his half back to Samuel Mullet). The court also said the "Defendants have been unjustly enriched" by this amount. The court concluded, "Judgment is rendered against Defendants in favor of Plaintiff in the amount of $199.346.77 plus costs of this action." (J.E. 9/11/18).

{¶78} Appellant complains this order improperly makes him liable for the whole amount to which Appellee is entitled. He concludes he should only be liable for half of $199,346.77, with the Estate liable for the other half (had it not been dismissed as a party). He points out Appellee consented to the Estate's dismissal rather than filing a cross-appeal as to the dismissal and/or the preceding decision that money damages could not be imposed due to the failure to present a claim. He states the trial court erred in

Case No. 18 JE 0018

essentially holding the surviving spouse jointly and severally liable for the debts of the deceased spouse. He claims there is no evidence as to what Martha Mullet did with her share of the lease bonus payment, and "there is nothing in the record indicating that Samuel received or inherited Martha's share of that bonus payment." He believes allowing Appellee to collect her entire damages from him circumvents the aforementioned statutes requiring a timely claim to be presented to the estate.

**{¶79}** As stated above, Appellant agreed with the trial court's recitation on the record: "the real estate transferred to Mr. Mullet on her death * * * the money was in a joint account with survivorship. So, it went too. * * * So there's nothing to impose a constructive trust on her about." This demonstrated the bonus money did not proceed through the probate estate (as a joint and survivor account passes outside of probate). *See Wright v. Bloom*, 69 Ohio St.3d 596, 603, 607 635 N.E.2d 31 (1994) ("the joint and survivorship account as a viable non-probate mechanism" provides conclusive evidence, in the absence of fraud, "to establish the surviving party's right to the sums remaining on deposit at the depositor's death as against the estate of the depositor").

**{¶80}** Appellee applies a presumption that Appellant benefitted from the entire 2011 lease payment tendered to the married couple as joint owners before Martha's death and after her death when any remaining money passed solely to Appellant. Appellant does not actually argue that several liability cannot apply to an action seeking unjust enrichment and cites no law in support; although, he suggests as much by stating there is no direct evidence he benefited from his wife's share of the bonus because it may have been spent before her death.

**{¶81}** First, the trial court's agreed-upon recitation of the parties' stipulation about the Estate could suggest that prior to Martha's death the married parties maintained their joint lease bonus payment (received from joint and survivorship titled real estate) as a jointly owned asset (with survivorship). It could also suggest the entire money at issue was still on deposit and directly passed to Appellant through the joint and survivorship account (or what remained was conveyed to Samuel on his wife's death). This could not be clarified at the scheduled hearing on economic issues because the parties waived the hearing, claiming the stipulation was all the evidence there was to present and they did not present briefs on the pending economic issues after the court found Appellee owned

one-half of the subject property. (We note the only claim remaining against the Estate before the trial was based on constructive trust, and the court did not impose a constructive trust on Appellant's account.)

**{¶82}** Moreover, unjust enrichment is a quasi-contractual theory of recovery which can be used "when a party retains money or benefits which in justice and equity belong to another." *Liberty Mut. Ins. Co. v. Industrial Comm. of Ohio*, 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988); *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). The Mullets acted jointly and concurrently to produce a single injury. And, joint and several liability has been applied to quasi-contractual or implied contractual recoveries. *See Burgin v. Madden*, 6th Dist. No. Lucas L-01-1267, 2002-Ohio-2636, ¶ 30.

**{¶83}** Furthermore, although the trial court mentioned the Mullets were unjustly enriched, this was based on the breach of an express contract for the sale of land. The signing of the lease and retention of the bonus by the Mullets was found to be a breach of the express contract selling the property to the Shrocks. Appellee concludes the amount of judgment ($199,346.77) was equivalent to the damages from the Mullets' breach of the agreement, and Samuel Mullet can properly be held liable for this entire amount under the well-settled law that there is joint and several liability where an agreement has two obligors (unless the agreement says differently).

**{¶84}** For instance, "a promise by two or more promisors generally suggests that the same performance, and not separate performances, will be rendered" unless the parties' intent shows otherwise upon employing contract interpretation principles. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 17, ¶ 27 ("joint and several liability generally attaches when multiple parties default on their collective promise to pay a single sum of money, unless the contract sets forth their individual obligations"). "The question is merely what was the performance promised and who promised it." *Id.* at ¶ 27. This law is also applied to oral contracts. *See id.* at ¶ 27, fn. 9, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 24 (but finding liability was not joint and several because the parties agreed to pay different amounts in the oral settlement agreement and there were other indications the separate payment by each would satisfy the settlement).

Case No. 18 JE 0018

**{¶85}** Appellant acknowledges the property was held by him and his wife in a joint and survivorship deed at the time the contract for the sale was formed and at the time they signed the lease and received the signing bonus. The Mullets entered an oral contract to sell the subject property to the Shrocks, "in essence, promising the same performance." *See In re All Kelley & Ferraro Asbestos Cases* at ¶ 34, citing *Wallace v. Jewell*, 21 Ohio St. 163 (1871). The Mullets "promised a single undivided performance" as opposed to "a limited and separate performance." *See id.* at ¶ 27, quoting 9 Corbin on Contracts, Section 926, at 625 (Interim Ed.2002). Considering "the performance promised and who promised it," the liability for breach of the oral contract was not merely joint but was joint and several. *See id.* at ¶ 27, 34.

**{¶86}** "When a contract provides for joint and several liability, an obligee may proceed against one or more of the obligors." *Ohio Sav. Bank v. Virden*, 9th Dist. No. 17885 (Feb. 26, 1997) ("Since plaintiff had the option of proceeding against Mrs. Virden alone, it was not required to make Mr. Virden's estate a party in order to hold her personally liable on the loan."). Consequently, Appellee could proceed solely against Samuel Mullet for the entire amount of her damages suffered by the breach. For the various foregoing reasons, this assignment of error is overruled.

**{¶87}** The trial court's judgment is hereby affirmed.


Waite, P.J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**